09/13/2019

Mr. Lee Shannon
Brown & Brown, Inc. (Alpharetts, GA)
900 North Point Parkway, Suite 300
Alpharetta, GA  30005

Re:     NAOS On-Site Staffing, LLC
        Policy Number: PRA 5854106-07
        Effective Date: 9/13/2019

Dear Mr. Shannon,

Thank you for selecting our insurance program for the captioned business.  Our insurance policies have been designed specifically for staffing firms at large , and we have serviced the industry since 1965.

We are committed to providing you with the highest level of customer satisfaction possible .  If for any reason you have questions, comments or concerns, we are here for you.  Please contact your WW representative should you require assistance.

Again, thank you for your business.  We look forward to serving you.

Sincerely,

*Gail Colao*

Gail Colao
gcolao@wwspi.com
Underwriter

EXHIBIT E

**World Wide Specialty Programs**

World Wide Specialty Programs, Inc.  ·  World Wide New York Insurance Services, Inc. - CA, NH, TX
68 South Service Road, Suite 235, Melville, New York 11747  ·  631-390-0900  ·  800-245-9653  ·  FAX 631-390-0922  ·  wwspi.com



# Staffing Liability Program Claims Procedures

**Insured's Duties in Event of a Loss, Claim, or Suit:**

When you or a member of your staff are made aware of a potential claim, receive notice of a claim, or are served with suit papers, notice should be forwarded immediately
to Zurich in North America.

When reporting a claim send all relevant claim documents to Zurich via:
(There are 5 reporting methods listed below).

**1. Email:** usz_carecenter@zurichna.com

**2. Web Reporting:**

- Log on to www.zurichna.com

- Click on the "Claims" link and on the right side of screen click "ZNA Online Claims"

- From left side of screen, click on the type of claim that you want to report

- Follow the prompts and hit "Submit"

**3. Phone: 800-987-3373**

**4. Fax: 877-962-2567**

**5. Mail: Zurich in North America**
   P.O. Box 49547
   Colorado Springs, CO 80949

Along with the relevant claim documents, please include the following information:

- Refer to program of insurance - World Wide Staffing Services Insurance
- Policy number
- Name of Insured
- Name of Insured's contact person along with telephone & fax numbers
- Date of loss
- Type of loss
- Brief description of the loss
- Location of loss
- Claimant

## What Happens After You Report a Claim?

**Written Acknowledgment Letter:** Within 24 to 48 hours upon Zurich's receipt of the claim, Zurich will send the Insured a written letter of acknowledgement with the claims number assigned to the claim and the name and contact information of the Claims Professional assigned to adjust the claim.

**Telephone Call from the Claims Professional:** The Claims Professional assigned to the claim will contact the Insured within 1 business day of receipt of the claim to discuss the claim and further handling.

**Lawsuits:** If a lawsuit has been filed against the Insured, the Claims Professional will confirm coverage and then assign defense counsel for the Insured. Defense counsel assignment will be made from a panel list of qualified attorneys in the jurisdiction who have the relevant experience to defend claims against the staffing industry.

**General Questions:** Our clients are urged to contact us at any time during the claim process with questions or concerns.

**Margarita Hambrock, CPCU, ARe**
Compliance Manager & Actuary
**World Wide Specialty Programs Inc.**
68 South Service Road, Suite 235
Melville, NY  11747
Phone (631) 390-0900 ext 135
Phone (800) 245-9653
Fax (631) 390-0922
mhambrock@wwspi.com
www.wwspi.com



# Commercial Insurance Policy



# SANCTIONS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement,application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer,underwriter, we, us, and our,or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**Insured Name:**   NAOS On-Site Staffing, LLC
**Policy Number:**   PRA 5854106-07
**Effective Date:**   09/13/2019



### THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA :
**1% of General Liability Premium, 1% of Employee Benefits Premium**

*Any information required to complete this Schedule, if not shown above, will be shown in the quote or proposal.

**A.   Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B.   Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share:
January1, 2015 - December 31, 2015 federal share: 85%
January1, 2016 - December 31, 2016 federal share: 84%
January1, 2017 - December 31, 2017 federal share: 83%
January1, 2018 - December 31, 2018 federal share: 82%
January1, 2019 - December 31, 2019 federal share: 81%
January1, 2020 - December 31, 2020 federal share: 80%

**C.   Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D.   Availability**
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E.   Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism :
**1.**   To be an act of terrorism;

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an "act of terrorism" if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# Common Policy Declarations

**Policy Number:**    PRA 5854106-07                                       **Renewal of:** PRA 5854106-06

**Named Insured and Address:**                                  **Agency Name and Address:**
NAOS On-Site Staffing, LLC                                      World Wide Specialty Programs, Inc.
6455 East Johns Crossing                                        68 South Service Road Suite 235
Suite 425                                                       Melville, NY  11747
John Creek, GA  30097

                                                                **Agency Code:** 93962000

**Policy Period:**     From: 09/13/2019          To: 09/13/2020          12:01 A.M. local time at the address shown above.

**Business Description:** Staffing Service

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group.  The company providing insurance for each applicable coverage part is designated below.  The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S)**

| Coverage Part | | |
|---|---|---|
| Commercial General Liability | PREMIUM: | $20,669.00 |
| Issued by Zurich American  Insurance Company | | |
| Employee Benefits Liability | PREMIUM: | $835.00 |
| Issued by Zurich American  Insurance Company | | |
| Employment Related Practices Liability | PREMIUM: | $46,458.00 |
| Issued by Zurich American  Insurance Company | | |
| Stop Gap Liability | PREMIUM: | $50.00 |
| Issued by Zurich American  Insurance Company | | |
| Professional Liability | PREMIUM: | $10,231.00 |
| Issued by Zurich American  Insurance Company | | |
| Abusive Acts Liability | PREMIUM: | $1,456.00 |
| Issued by Zurich American  Insurance Company | | |
| Hired & Non-owned Auto Liability | PREMIUM: | $5,237.00 |
| Issued by Zurich American  Insurance Company | | |
| Crime Coverage | PREMIUM: | $6,928.00 |
| Issued by Zurich American  Insurance Company | | |
| | TRIA PREMIUM: | $267.00 |
| | Total Policy Premium* | $92,131.00 |
| | *This premium does not include Taxes or Surcharges | |
| | Taxes And Surcharges | $0.00 |

Endorsements Effective at Inception:                 See **Schedule Of Forms And Endorsements**

Date issued:      09/13/2019

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.



# Important Notice – In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                                          Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email**: info.source@zurichna.com

---

**Policy Number** PRA 5854106-07

**SCHEDULE OF FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| Named Insured: | NAOS On-Site Staffing, LLC | Effective Date: 09/13/2019 |
| | | 12:01 A.M., Standard Time |
| Agent Name: | World Wide Specialty Programs, Inc. | Agent No. 93962000 |

**COMMON POLICY FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-GU-727-A CW 0806 | Cover Sheet |
| U-GU-1191-A CW 0315 | Sanctions Exclusion Endorsement |
| U-GU-630-D CW 0115 | Terrorism - Policy Disclosure Endorsement |
| U-SI-D-100-A CW 1011 | Common Policy Declarations |
| U-GU-319-F 0109 | Important Notice - In Witness Clause |
| U-GU-619-A CW 1002 | Schedule of Forms and Endorsements |
| U-GU-621-A CW 1002 | Schedule of Named Insured(s) |
| IL 0003 0908 | Calculation of Premium |
| IL 0017 1198 | Common Policy Conditions |
| IL 0021 0908 | Nuclear Energy Liability Exclusion Endorsement |
| IL 0262 0215 | Georgia Changes - Cancellation And Nonrenewal |
| U-GU-298-B CW 0494 | Cancellation By Us (Blanket) |
| U-SI-111-A GA 1011 | Georgia Changes - Cancellation And Nonrenewal |
| U-GU-767-B CW 0115 | Cap On Losses From Certified Acts Of Terrorism |

**GENERAL LIABILITY FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-SIL-D-100-A CW 1011 | Commercial General Liability Declarations |
| CG 0001 0413 | Commercial Liability Coverage Form |
| CG 0300 0196 | Deductible Liability Insurance |
| CG 2026 0413 | Additional Insured - Designated Person Or Organization (Blanket) |
| CG 2147 1207 | Employment Related Practices Exclusion |
| CG 2404 0509 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| U-GL-923-B CW 0604 | Silica Or Silica Mixed Dust Exclusion |
| U-GL-1171-A CW 0703 | Fungi Or Bacteria Exclusion Endorsement |
| U-GL-1178-A CW 0703 | Asbestos Exclusion Endorsement |
| U-GL-1250-A CW 0905 | Abuse Or Molestation Exclusion |
| U-GL-1327-B CW 0413 | Other Insurance Amendment - Primary And Non-Contributory |
| U-GL-1342-A CW 1007 | Lead Liability Exclusion |
| U-GL-1517-B CW 0413 | Recording And Distribution Of Material Or Information In Violation Of Law Exclusion |
| U-SIL-102-A CW 1011 | Designated Project Limits Of Insurance Endorsement |
| U-SIL-105-B CW 0817 | Staffing Industry Amendatory Endorsement |
| U-SIL-107-A CW 1011 | Designated Location Limits Of Insurance Endorsement |

**EMPLOYEE BENEFITS LIABILITY FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-GL-D-851-B CW 0904 | EBL - Occurrence Declarations |
| U-GL-851-B CW 0604 | EBL - Occurrence Coverage Form |
| U-GL-852-A CW 0796 | Deductible Endorsement - Occurrence |
| U-SIL-108-A CW 1011 | Employee Benefits Liability Amendatory Endorsement |

**EMPLOYMENT PRACTICES LIABILITY FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-SIL-D-101-B CW 0618 | Staffing Industry Employment Practices Liability Declarations (Claims-Made) |
| U-SIL-112-B CW 0618 | Staffing Industry Employment Practices Liability Coverage Form (Claims-Made) |
| U-SIL-272-A GA 1111 | Georgia Changes |

**Policy Number** PRA 5854106-07

## SCHEDULE OF FORMS AND ENDORSEMENTS

Named Insured:     NAOS On-Site Staffing, LLC                    Effective Date: 09/13/2019

                                                                 12:01 A.M., Standard Time

Agent Name:        World Wide Specialty Programs, Inc.           Agent No. 93962000

---

**STOP GAP FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-GL-274-C MU 0506 | Stop Gap Employers Liability Declarations |
| U-GL-274-C-1 CW 1204 | Stop Gap Employers Liability Coverage Form |

**PROFESSIONAL LIABILITY FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-SIL-D-103-A CW 1011 | Staffing Industry Professional Liability Declarations |
| U-SIL-173-B CW 0119 | Staffing Industry Professional Liability Coverage Form |
| U-SIL-181-A CW 1011 | Designated Services Exclusion |
| U-SIL-183-A CW 1011 | First Dollar Defense Coverage |

**ABUSIVE ACTS LIABILITY FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-GL-D-1120-A CW 0406 | Abusive Act Liability Coverage Form Declarations |
| U-GL-D-1121-B CW 0608 | Schedule of Insureds |
| U-GL-1275-A CW 0406 | Abusive Acts Liability Coverage Form |
| U-GL-1354-A CW 0608 | Prior Criminal Conviction Exclusion Deletion |

**HIRED AND/OR NON-OWNED AUTO LIABILITY FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-SIA-D-100-C CW 0217 | Hired And/Or Non-Owned Auto Coverage Declarations |
| CA 0001 1013 | Business Auto Coverage Form |
| CA 0109 1013 | Georgia Changes |
| CA 0444 0310 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us (Waiver Of Subrogation) |
| CA 2048 0299 | Designated Insured |
| U-CA-531-B (2/08) | Terrorism Disclosure Notice |
| U-SIA-100-B CW 0217 | Staffing Industry Amendatory Endorsement |

**CRIME COVERAGE  FORMS AND ENDORSEMENTS**

| | |
|---|---|
| U-SIC-D-100-A CW 1011 | Staffing Industry Crime Coverage Declarations |
| U-SIC-100-B CW 0917 | Staffing Industry Crime Coverage Form (Loss Sustained Form) |
| U-SIC-102-A CW 1011 | Crime Plus - Schedule Of Limits ($50,000 Limit) |
| U-SIC-103-A CW 1011 | Crime Plus Endorsement - Additional Covered Expenses |
| U-SIC-111-A CW 1011 | Loss Payable Clause |
| U-SIC-114-A CW 1011 | Limits Of Insurance And Deductible Applicable To Specified Client |
| U-SIC-127-A GA 1011 | Georgia Changes - Concealment, Misrepresentation Or Fraud |
| U-SIC-168-A GA 1111 | Georgia Changes - Client's Coverage For Your Employee's Dishonest Acts - Exclusion Of PEO Worker |

**Policy Number:** PRA 5854106-07

### SCHEDULE OF NAMED INSURED(S)

Named Insured:                                            Effective Date: 09/13/2019
NAOS On-Site Staffing, LLC                                        12:01 A.M., Standard Time

Agent Name:                                              Agent No. 93962000
World Wide Specialty Programs, Inc.

---

NBJ Group, LLC

North American On Site, LLC

U-GU-621-A CW (10/02)

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

       CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
       COMMERCIAL AUTOMOBILE COVERAGE PART
       COMMERCIAL GENERAL LIABILITY COVERAGE PART
       COMMERCIAL INLAND MARINE COVERAGE PART
       COMMERCIAL PROPERTY COVERAGE PART
       CRIME AND FIDELITY COVERAGE PART
       EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
       EQUIPMENT BREAKDOWN COVERAGE PART
       FARM COVERAGE PART
       LIQUOR LIABILITY COVERAGE PART
       MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
       OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
       POLLUTION LIABILITY COVERAGE PART
       PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
       RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was comput-
ed based on rates in effect at the time the policy was
issued. On each renewal, continuation, or anniversary
of the effective date of this policy, we will compute the
premium in accordance with our rates and rules then
in effect.

Wolters Kluwer Financial Services | Uniform Forms™

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc.,  1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007
Wolters Kluwer Financial Services | Uniform Forms™

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007

IL 02 62 02 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

**a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.:**

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

**a.** Nonpayment of premium, whether payable to us or to our agent;

**b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

**c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

**d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b.**, **c.** or **d.** above.

**E.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

Endorsement #



# Cancellation By Us

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**Named Insured and Mailing Address:**
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

**Producer:**
World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Boiler and Machinery Coverage Form**
**Business Auto Coverage Form**
**Commercial Crime Coverage Form**
**Commercial General Liability Coverage Form**
**Commercial Inland Marine Coverage Form**
**Commercial Property Coverage Form**
**Farm Coverage Form**
**Garage Coverage Form**
**Liquor Liability Coverage Form**
**Motor Carrier Coverage Form**
**Pollution Liability Coverage Form**
**Products/Completed Operations Liability Coverage Form**
**Truckers Coverage Form**

SCHEDULE

**Number of Days' Notice:** 30

Any person or organization with whom you have agreed to provide 30 days prior written notice of cancellation, as identified on the list of such persons or organizations that is currently on file with the company

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2, of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

Signed by: _Dorothy Taylor_

Authorized Representative

9/30/2019

Date

# Georgia Changes – Cancellation And Nonrenewal



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Staffing Industry Crime Coverage Form (Discovery Form)**
**Staffing Industry Crime Coverage Form (Loss Sustained Form)**
**Staffing Industry Employment Practices Liability Coverage Form (Claims-Made)**
**Staffing Industry Professional Liability Coverage Form**
**Staffing Industry Professional Liability Coverage Form (Claims-Made)**

**A.** Paragraph **1.** in the **Cancellation** Common Policy Condition is replaced by the following:

    **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

        **a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

        **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

        Our notice will state the effective date of cancellation, which will be the later of the following:

           **(1)** 10 days from the date of mailing or delivering our notice, or

           **(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **5.** in the **Cancellation** Common Policy Condition is replaced by the following:

    **5. Premium Refund**

        **a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

        **b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

        **c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

        **d.** If the first Named Insured cancels, the refund may be less than pro rata.

        **e.** The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any provision to the contrary:

    If we decide to:

    **1.** Cancel or nonrenew this policy; or

    **2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**3.**   Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. We will mail or deliver notice at least:

**1.**   10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**2.**   45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**3.**   45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| NAOS On-Site Staffing, LLC | PRA 5854106-07 | 09/13/2019 | |

*Any information required to complete this Schedule, if not shown above, will be shown in the quote or proposal.

**A.   Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B.   Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share:

January1, 2015 - December 31, 2015 federal share: 85%

January1, 2016 - December 31, 2016 federal share: 84%

January1, 2017 - December 31, 2017 federal share: 83%

January1, 2018 - December 31, 2018 federal share: 82%

January1, 2019 - December 31, 2019 federal share: 81%

January1, 2020 - December 31, 2020 federal share: 80%

**C.   Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D.   Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E.   Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.**   To be an act of terrorism;

Copyright © 2015 Zurich American Insurance Company

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2.  To be a violent act or an act that is dangerous to human life, property or infrastructure;

3.  To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4.  To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an "act of terrorism" if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Commercial General Liability Declarations



**Policy Number:**  PRA 5854106-07

Item 1.  Insured by the stock company below and hereinafter call the Company:

Zurich American Insurance Company
Administrative Office
1400 American Ln
Schaumburg, IL 60196
(800) 382-2150

Item 2.  **Named Insured:**

NAOS On-Site Staffing, LLC

**Agency Name:**

World Wide Specialty Programs, Inc.

**Agency Code:**   93962000

Item 3.  **Policy Period:**    From: 09/13/2019 To: 09/13/2020 12:01 A.M. local time at the address shown above.

Item 4.  **Limits of Insurance**

| | | |
|---|---:|---|
| General Aggregate Limit | $ 2,000,000 | |
| Products-Completed Operations Aggregate Limit | $ 2,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage To Premises Rented To You Limit | $ 1,000,000 | Any one premises |
| Medical Expense Limit | $ 10,000 | Any one person |
| Personal And Advertising Injury Limit | $ 1,000,000 | Any one person or organization |

Item 5.  **Annual Premium**    $ 20,669.00
This premium does not include Taxes or Surcharges

Item 6.  Endorsements Effective at Inception:    See **Schedule Of Forms And Endorsements**

Date issued:   09/13/2019

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 04 13**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

                    © Insurance Services Office, Inc., 2012                    CG 00 01 04 13

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

(1)  Agrees in writing to:

(a)  Cooperate with us in the investigation, settlement or defense of the "suit";

(b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)  Notify any other insurer whose coverage is available to the indemnitee; and

(d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)  Provides us with written authorization to:

(a)  Obtain records and other information related to the "suit"; and

(b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by;

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C;**

  **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012     CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

POLICY NUMBER:   PRA 5854106-07

**COMMERCIAL GENERAL LIABILITY**
**CG 03 00 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM   or | PER |
| Bodily Injury Liability | $N/A | $N/A |
| OR | | |
| Property Damage Liability | $N/A | $N/A |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $N/A | $25,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

    **1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

        **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

        **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

        **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

            **(1)** "Bodily injury";

            **(2)** "Property damage"; or

            **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

Copyright, Insurance Services Office, Inc.,  1994

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

  **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

  **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

  **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

    **(1)** "Bodily injury";

    **(2)** "Property damage"; or

    **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

  **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

  **2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96   ☐

POLICY NUMBER:  PRA 5854106-07

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| Any person or organization who you are required to add as an additional insured on this policy under a contract or agreement shall be an insured, but only with respect to that person's or organization's liability arising out of your operations as a "Staffing Service" or premises owned by or rented to you. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Wolters Kluwer Financial Services | Uniform Forms™

**POLICY NUMBER:**    PRA 5854106-07

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Person Or Organization:** |
|---|
| Any person or organization who you are required to add by written contract or written agreement which is executed before a "Staffing Services" "Occurrence" to waive your rights of recovery . |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV - Conditions:**
We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

# Silica or Silica Mixed Dust Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

The following additional exclusion is added to **2. Exclusions** of **Section I. Coverages**:

2.  **Exclusions**

This insurance does not apply to:

**Silica or Silica Mixed Dust**

A.  "Bodily injury", "property damage"   or   "personal and advertising injury" caused directly or indirectly, in whole or in part, by  the actual, alleged or threatened inhalation, ingestion, absorption, exposure to, existence of or presence of "silica"; or

B.  Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any manner responding to or assessing the effects of "silica" by any insured or by any other person or entity.

C.  For the purposes of this exclusion, the following definition applies:

"Silica" means:

(1)  Any form of crystalline or non-crystalline (amorphous) silica, silica particles, silica compounds, silica dust or silica mixed or combined with dust or other particles; or

(2)  Synthetic silica, including precipitated silica, silica gel, pyrogenic or fumed silica or silica-flour.

Includes copyrighted material of Insurance Services Office , Inc. with its permission.

# Fungi Or Bacteria Exclusion Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. - Coverage A - Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B - Personal And Advertising Injury Liability**:

**2.    Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A.    "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

1.    "Fungi"or "bacteria"; or

2.    Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B.    Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to,  or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C.    For the purposes of this exclusion, the following definitions are added:

1.    "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

2.    "Spores" means reproductive bodies produced by or arising out of  "fungi".

3.    "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

U-GL-1171-A CW (7/03)

Includes copyrighted material of Insurance Services Office , Inc. with its permission.



# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

**2.    Exclusions**

This insurance does not apply to:

**Asbestos**

**A.**    "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.**    Any sums that any insured or other entity must pay, repay or reimburse because of any:

1.    Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or   others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

2.    Claim   or "suit"   for damages  arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or   others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.**    Any other loss, cost or expense arising out of or relating in any way to asbestos.

Includes copyrighted material of Insurance Services Office , Inc. with its permission.

# Abusive Act Liability Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to paragraph **2. Exclusions** of **Section I-Coverage A-Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Section I-Coverage B-Personal And Advertising Injury Liability**:

    **1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or relating in any way to an "abusive act"; or

    **2.** Any  loss, cost or expense arising out of or relating in any way to an "abusive act".

**B.** For purposes of this endorsement, the following additional definition applies:

    **1.** "Abusive act" means any act or series of acts of actual or threatened abuse or molestation done to any person, including any act or series of acts of actual or threatened sexual abuse or molestation done to any person by anyone who causes or attempts to cause the person to engage in a sexual act:

        **a.** Without the consent of or by threatening the person, placing the person in fear or asserting undue influence over the person;

        **b.** If that person is incapable of appraising the nature of the conduct or is physically incapable of declining participation in or communicating unwillingness to engage in the sexual act; or

        **c.** By engaging in or attempting to engage in lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of any person.

U-GL-1250-A CW (09/05)

Includes copyrighted material of ISO Properties, Inc., with its permission
Copyright, ISO Properties, Inc., 2003

# Other Insurance Amendment - Primary And Non-Contributory



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured:**  NAOS On-Site Staffing, LLC

**Address (including ZIP Code):**        6455 East Johns Crossing
Suite 425
John Creek, GA  30097

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1. The following paragraph is added to the Other Insurance Condition of Section **IV - Commercial General Liability Conditions**:
This insurance is primary insurance to and will not seek contribution from any other insurance available to an additional insured under this policy provided that:

   **a.**     The additional insured is a Named Insured under such other insurance ; and
   **b.**     You are required by a written contract or written agreement that this insurance would be primary and would not seek contribution from any any other insurance available to the additional insured.

2. The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV - Commercial General Liability Conditions**:

   This insurance is excess over:

   Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured , in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit".  This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office , Inc. with its permission.



# Lead Liability Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to Paragraph **2. Exclusions,** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2**. **Exclusions**, of **Coverage B - Personal And Advertising Injury Liability**:This insurance does not apply to:

**Lead**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, caused by or related to: the actual, alleged or threatened:

    **(a)** Exposure to or existence of lead, paint containing lead, or any other material, product  or substance containing lead; or

    **(b)** Manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material, product or substance containing lead,

    whether the lead is or was at any time airborne, ingested, inhaled, absorbed, transmitted in any fashion, or found in any form whatsoever, or whether any other cause, event, material, product or substance contributed concurrently or in any sequence to the injury or damage.;

**(2)** Any sums that any insured or other entity must pay, repay or reimburse because of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, sample, monitor, clean up, remove, abate, cover, contain, treat, mitigate, or neutralize lead, paint containing lead, or any other material, product or substance containing lead, or in any way respond to, or assess the effects of lead in any form; or

    **(b)** Claim or "suit" for damages relating to testing for, sampling, monitoring, cleaning up, removing, abating, covering, containing, treating, mitigating, or neutralizing lead, paint containing lead, or any other material, product or substance containing lead or in any way responding to or assessing the effects of lead in any form.

**(3)** Any other loss, cost or expense arising out of, caused by or relating in any way to lead.

# Recording And Distribution Of Material Or Information In Violation Of Law Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Exclusion **q. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

    **2. Exclusions**

    This insurance does not apply to:

    **q. Recording And Distribution Of Material Or Information In Violation Of Law**

    "Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

    **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

    **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

    **2. Exclusions**

    This insurance does not apply to:

    **p. Recording And Distribution Of Material Or Information In Violation Of Law**

    "Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

    **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

    **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office , Inc. with its permission.

# Designated Project Limits Of Insurance Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

Named Insured and Mailing Address:
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

Producer:
World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

### SCHEDULE

| | |
|---|---|
| Combined Total Designated Project Aggregate Limit: | $ 5,000,000 |
| Designated Project Aggregate Limit: | $ 2,000,000 |

Designated Project(s):

Any project for which you have agreed, pursuant to a contract, to provide a separate Designated Project Aggregate Limit for that "project", except where such contract is prohibited by law.

Includes copyrighted material of Insurance Services Office , Inc. with its permission.

**A.** The Combined Total Designated Project Aggregate Limit shown in the Schedule above is the most we will pay for the sum of all damages caused by "occurrences" under Section **I** - Coverage **A**, and for medical expenses caused by accidents under Section **I** - Coverage **C**, which can be attributed only to ongoing operations at all designated "projects" shown in the Schedule above.

**B.** Subject to Paragraph **A.** above, for all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** - Coverage **A**, and for all medical expenses caused by accidents under. Section **I** - Coverage **C**, which can be attributed only to ongoing operations at a single designated "project" shown in the Schedule above:

**1.** A separate Designated Project Aggregate Limit applies to each designated "project", and that limit is the amount shown in the Schedule as the Designated Project Aggregate Limit.

**2.** The Designated Project Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

U-SIL-102-A CW (10-11)

Page 2 of 3

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Project Aggregate Limit for that designated "project" and the Combined Total Designated Project Aggregate Limit. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Project Aggregate Limit for any other "project".

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Project Aggregate Limit.

**C.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** - Coverage **A**, and for all medical expenses caused by accidents under Section **I** - Coverage **C**, which cannot be attributed only to ongoing operations at a single designated "project":

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit shown in the Declarations, whichever is applicable; and

**2.** Such payments shall not reduce:

    **a.** any Designated Project Aggregate Limit; or

    **b.** the Combined Total Designated Project Aggregate Limit.

**D.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce:

    **a.** the General Aggregate Limit;

    **b.** the Designated Project Aggregate Limit; or

    **c.** the Combined Total Designated Project Aggregate Limit.

**E.** For the purposes of this endorsement, the **Definitions** section is amended by the addition of the following definitions:
"Project" means the operations you perform pursuant to a contract, as shown in the Schedule. It includes collectively, all premises, other than premises owned by or rented to you, on which you are performing operations that are set forth in the applicable contract pertaining to such "project". If the applicable "project" has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same "project".

**F.** The provisions of Section **III - Limits Of Insurance** not otherwise modified by this endorsement shall continue to apply as stipulated.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Staffing Industry Amendatory Endorsement



| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. | |
|---|---|
| Policy No. PRA 5854106-07 | Effective Date: 11/07/2012 |

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

It is agreed that:

**A.   Section I - Coverages, Coverage A - Bodily Injury And Property Damage Liability** is amended as follows:

   **1.**   Exclusion **g.** is replaced by the following:

      **g.   Aircraft, Auto Or Watercraft**

        "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

        This exclusion does not apply to:

        **(1)**   A watercraft while ashore on premises you own or rent;

        **(2)**   A watercraft you do not own that is:

           **(a)**   Less than 51 feet long; and

           **(b)**   Not being used to carry persons or property for a charge;

        **(3)**   Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

        **(4)**   Liability assumed under any "insured contract" for the ownership, maintenance or use of any aircraft or watercraft;

        **(5)**   Liability assumed under any "insured contract" for the maintenance or "loading or unloading" of an "auto"; or

        **(6)**   "Bodily injury" or "property damage" arising out of:

           **(a)**   The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

           **(b)**   The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

   **2.**   Exclusion **j.** is replaced by the following:

      **j.   Damage To Property**

        "Property damage" to:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III - Limits Of Insurance**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to:

**(a)** Liability assumed under a sidetrack agreement;

**(b)** "Property damage" to property rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by your "employee", "volunteer worker" or intern while that person is performing "staffing services" for your clients; or

**(c)** Liability arising out of services performed by any individual or organization under written contract or written agreement with you who provides "staffing services" on your behalf and at your direction for your clients.

Paragraphs **(4)**, **(5)** and **(6)** do not apply to "property damage" arising out of "staffing services".

**3.** The following exclusions are added to Paragraph **2. Exclusions**:

**Actions Or Activities Of PEO Worker**

Damages for "bodily injury" or "property damage" arising from the actions or activities of any "PEO worker".

This exclusion does not affect our duty to defend you, in accordance with **SECTION I - COVERAGES**, **Coverage A Bodily Injury And Property Damage Liability**, **Insuring Agreement**, for providing "PEO services".

**Wrongful Acts**

"Bodily injury" or "property damage" arising from a wrongful act in the rendering or failure to render professional services to or for your client.

For the purposes of this exclusion, wrongful act shall mean any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing professional services to your clients by you or by any person for whose acts you are legally responsible.

For the purposes of this exclusion, professional services shall mean:

**1.** Medical, surgical, psychiatric, dental, nursing, podiatric or chiropractic examination, treatment or diagnostic imaging to any person, including the furnishing of food or beverage in connection therewith, however the furnishing of food or beverages as the sole function of the insured is not professional services;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

3.  Professional health care services of a pharmacist;
4.  Furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;
5.  Veterinary services;
6.  Cosmetic, massage, or physiotherapy services or treatments;
7.  Engineering, design, architectural, draftsperson or survey services, including:
    a.  The preparing, approval or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or
    b.  Supervisory, inspection, architectural, design or engineering activities;
8.  Advice or services of an accountant, advertiser, attorney, public notary, paralegal, real estate broker or agent, insurance broker or agent, travel agent, or financial advisor;
9.  Services of an Information Technology or computer consultant, or programmer; and
10. Claim investigation, adjustment, appraisal or audit services.

**B.  Section I - Coverages, Coverage B - Personal And Advertising Injury Liability** is amended as follows:

1.  Exclusion **k.** does not apply.
2.  Exclusions **a.**, **b.**, **e.**, **f.**, **g.**, **h.**, **i.**, **l.**, and **p.** do not apply to any insured who did not personally acquiesce in or remain passive after having personal knowledge of such conduct. Our obligation to pay shall begin once the full extent of the assets of the responsible insured has been exhausted and once the Deductible as shown in the Declarations of the policy has been satisfied.
3.  The following exclusions are added to Paragraph **2. Exclusions**:

    **Actions Or Activities Of PEO Worker**

    Damages for "personal and advertising injury" arising from the actions or activities of any "PEO worker".

    This exclusion does not affect our duty to defend you, in accordance with **SECTION I - COVERAGES**, **Coverage B Personal And Advertising Injury Liability**, **Insuring Agreement**, for providing "PEO services".

    **Wrongful Acts**

    "Personal and advertising injury" arising from a wrongful act in the rendering or failure to render professional services to or for your client.

    For the purposes of this exclusion, wrongful act shall mean any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing professional services to your clients by you or by any person for whose acts you are legally responsible.

    For the purposes of this exclusion, professional services shall mean:

    1.  Medical, surgical, psychiatric, dental, nursing, podiatric or chiropractic examination, treatment or diagnostic imaging to any person, including the furnishing of food or beverage in connection therewith, however the furnishing of food or beverages as the sole function of the insured is not professional services;
    2.  Any professional service or treatment conducive to health;
    3.  Professional health care services of a pharmacist;
    4.  Furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;
    5.  Veterinary services;
    6.  Cosmetic, massage, or physiotherapy services or treatments;
    7.  Engineering, design, architectural, draftsperson or survey services, including:
        a.  The preparing, approval or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or
        b.  Supervisory, inspection, architectural, design or engineering activities;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

8. Advice or services of an accountant, advertiser, attorney, public notary, paralegal, real estate broker or agent, insurance broker or agent, travel agent, or financial advisor;

9. Services of an Information Technology or computer consultant, or programmer; and

10. Claim investigation, adjustment, appraisal or audit services.

**C.** **Section I - Coverages**, **Supplementary Payments - Coverages A And B** is amended as follows:

Paragraph **1.d.** is replaced by the following:

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**D.** **Section II - Who Is An Insured** is replaced by the following:

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization, other than an individual, partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" or interns only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees", "volunteer workers" or interns are insureds for:

   **(1)** "Bodily injury" or "personal and advertising injury":

   **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

   **(b)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** above; or

   **(c)** Arising out of his or her providing or failing to provide professional health care services except any "bodily injury" or "personal and advertising injury" arising out of one of your "employees" providing or failing to provide professional health care services to another of your "employees", but no "employee" is an insured for his or her providing or failure to provide such professional health care services.

   **(2)** "Property damage" to property:

   **(a)** Owned, occupied or used by,

   **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", interns, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   However, your "employee", "volunteer worker" or intern is an insured for "property damage" to property rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by your "employee", "volunteer worker" or intern while that person is performing "staffing services" for your clients.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**b.**   Any person (other than your "employee", "volunteer worker" or intern), or any organization while acting as your real estate manager.

**c.**   Any person or organization having proper temporary custody of your property if you die, but only:

**(1)**   With respect to liability arising out of the maintenance or use of that property; and

**(2)**   Until your legal representative has been appointed.

**d.**   Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**e.**   Any individual or organization under written contract or written agreement with you who provides "staffing services" on your behalf and at your direction for your clients.

**f.**   With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**(1)**   "Bodily injury" to an insured if another insured is driving the equipment; or

**(2)**   "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**g.**   Any person or organization who you are required to add as an additional insured on this policy under a contract or agreement shall be an insured, but only with respect to that person's or organization's liability arising out of your operations as a "staffing service" or premises owned by or rented by you.

This Paragraph **g.** shall include but is not limited to any specifically scheduled additional insured shown on an Additional Insured endorsement.

**3.**   Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.**   Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.**   Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.**   Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**E.**   **Section IV - Commercial General Liability Conditions** is amended as follows:

**1.**   Paragraph **2.a.** is replaced by the following:

**2.**   **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**   How, when and where the "occurrence" or offense took place;

**(2)**   The names and addresses of any injured persons and witnesses; and

**(3)**   The nature and location of any injury or damage arising out of the "occurrence" or offense.

You will not be considered to have knowledge of an "occurrence" or an offense which may result in a claim until:

**(1)**   If you are an individual, you or your Risk Manager,

**(2)**   If you are a corporation, your Corporate Officer or your Risk Manager,

Includes copyrighted material of Insurance Services Office, Inc. with its permission

      **(3)**  If you are a partnership or joint venture, your partner or member, or your Risk Manager,

      **(4)**  If you are a limited liability company, your member or your Risk Manager,

    is aware of such loss or "occurrence".

**2.**  The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us**:

However, if any insured is required by a written contract or written agreement which is executed before a "staffing services" "occurrence" to waive their rights of recovery from others, we agree to waive our rights of recovery.

**3.**  The following Condition is added:

**Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state .

**F.**  **Section V - Definitions** is amended as follows:

**1.**  The definition of "coverage territory" is replaced by the following:

"Coverage territory" means anywhere in the world.

**2.**  The definition of "employee" is replaced by the following:

"Employee" includes but is not limited to a "leased worker" and a "staffing services worker". "Employee" does not include a "temporary worker" or a "PEO worker".

**3.**  The following definitions are added:

    **a.**  "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

    **b.**  "PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

    **c.**  "Staffing services" means services provided by a staffing company to their clients including but not limited to :

      **(1)**  Staffing related administrative services provided by an Administrative Services Organization (ASO);

      **(2)**  "PEO service";

      **(3)**  Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client;

      **(4)**  Temporary, contingent or contract placement services;

      **(5)**  Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for " staffing services workers";

      **(6)**  Services performed on behalf of your client by a "staffing services worker" who is not a direct hire or permanent placement; and

      **(7)**  Services performed for a client company to supply that client company with a " staffing services worker".

    **d.**  "Staffing services worker" means a person who is furnished by you to your client to perform the duties to which you have agreed.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Designated Location Limits Of Insurance Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

Named Insured and Mailing Address:
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

Producer:
World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

**SCHEDULE**

| | |
|---|---|
| Combined Total Designated Location Aggregate Limit: | $ 5,000,000 |
| Designated Location Aggregate Limit: | $ 2,000,000 |

Designated Location(s):

The Designated Location Aggregate Limit shown above applies separately to each of your locations owned by or rented to you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**A.** The Combined Total Designated Location Aggregate Limit shown in the Schedule above is the most we will pay for the sum of all damages caused by occurrences under Section I - Coverage **A**, and for medical expenses caused by accidents under Section I - Coverage **C**, which can be attributed only to ongoing operations at all designated locations shown in the Schedule above.

**B.** Subject to Paragraph **A.** above, for all sums which the insured becomes legally obligated to pay as damages caused by occurrences under Section I - Coverage **A**, and for all medical expenses caused by accidents under Section I - Coverage **C**, which can be attributed only to ongoing operations at a single designated location shown in the Schedule above:

  **1.** A separate Designated Location Aggregate Limit applies to each designated location, and that limit is the amount shown in the Schedule as the Designated Location Aggregate Limit.

  **2.** The Designated Location Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A**, except damages because of bodily injury or property damage included in the products-completed operations hazard, and for medical expenses under Coverage **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or suits brought; or

   **c.** Persons or organizations making claims or bringing suits.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location Aggregate Limit for that designated "location" and the Combined Total Designated Location Aggregate Limit. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location Aggregate Limit for any other "location".

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location Aggregate Limit.

C. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage **A**, and for all medical expenses caused by accidents under Section I - Coverage **C**, which cannot be attributed only to ongoing operations at a single designated "location":

1. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce:

   a. any Designated Location Aggregate Limit; or

   b. the Combined Total Designated Location Aggregate Limit.

D. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce:

   a. the General Aggregate Limit;

   b. the Designated Location Aggregate Limit; or

   c. the Combined Total Designated Location Aggregate Limit.

E. For the purposes of this endorsement, the **Definitions** section is amended by the addition of the following definitions:
"Location" means premises owned by or rented to you, as shown in the Schedule, involving the same or connecting lots, or premises whose connection is interrupted only by a street, road way, water way or right-of-way of a railroad.

F. The provisions of Section **III - Limits Of Insurance** not otherwise modified by this endorsement shall continue to apply as stipulated.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**EMPLOYEE BENEFITS LIABILITY COVERAGE PART- OCCURRENCE DECLARATIONS**

Policy Number:PRA 5854106-07

Named Insured: NAOS On-Site Staffing, LLC

Policy Period:     Coverage begins 09/13/2019 at 12:01 A.M.;     Coverage ends 09/13/2020 at 12:01 A.M.

Producer Name: World Wide Specialty Programs, Inc.                    Producer No. 93962000

**Item 1.**  Limits of Insurance

$      2,000,000     Aggregate Limit
$      1,000,000     Each Act, Error or Omission Limit

**Item 2.**  Form of Business:
☐  Individual   ☐  Partnership   ☐  Joint Venture   ☐  Corporation
☒  Other

**Item 3.**  Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium | |
|---|---|---|---|---|---|
| | 2,781 | $ | Per Employee | $ | |
| | | $ | Flat Charge | $ | 835.00 |

Total Advance Premium For This Coverage Part: $ 835.00

Audit Period: ☐  Annual     ☐  Semi-annual     ☐  Quarterly     ☐  Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

SEE SCHEDULE OF FORMS AND ENDORSEMENTS.



# Employee Benefits Liability - Occurrence Coverage Form

**This Coverage Form provides *occurrence* coverage.  Please read the entire form carefully.**

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotes have special meaning.  Refer to the Definitions Section.

## Section I. Coverage - Employee Benefit Liability

**1.  Insuring Agreement**

**A.**  We will pay those sums that the "insured" becomes legally obligated to pay as damages because of any act, error, or omission of the "insured" in the "administration" of the "insured's" "employee benefit programs".  We will have the right and duty to defend the "insured" against any suit seeking those damages.  However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply.  We may, at our discretion, investigate any claim and settle any "suit" that may result; but:

**1.**  The amount we pay for damages is limited as described in Section II. - Limits of Insurance of this Coverage Part; and

**2.**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B.**  This insurance applies to an act, error or omission only if:

**1.**  The act, error, or omission takes place in the "coverage territory";

**2.**  The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a claim or "suit"; and

**3.**  The act, error, or omission occurs during the policy period.

**2.  Exclusions**

This insurance does not apply to any:

**A.**  "Bodily injury", "property damage" or "personal and advertising injury";

**B.**  Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.**  Any "claim" or "suit" arising out of discrimination or humiliation;

**D.**  Any "claim" or "suit"  arising out of an insurer's or other provider's failure to perform its contract;

**E.**  Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, or disability benefits law;

**F.**  Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.**  Any "claim" or "suit" arising out of:

**a.**  Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

**b.** The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

**c.** Any investment activity, including the management, administration, or disposition of assets of your "employee benefit programs"; or

**d.** Failure of any investment to perform as represented by any "insured".

**H.** Any "claim or "suit" arising out of an "Insured's" liability as a fiduciary under:

**a.** The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

**b.** The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

**3. Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any claim we investigate or settle or "suit" we defend:

**A.** All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us, and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our liability.

**B.** Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

**C.** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**D.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**II. Limits of Insurance**

**A.** The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

**(1)** "Insureds";

**(2)** Claims made or "suits" brought; or

**(3)** "Employees" or dependents or beneficiaries of "employees" making claims or bringing "suits".

**B.** The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

**C.** Subject to the Aggregate Limit provisions in **B.** above, the Each Act, Error, or Omission Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

**D.** The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**III. Conditions**

**A. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

**B. Duties in the Event of an Act, Error, Omission, Claim or Suit**

**(1)** Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a claim. To the extent possible, notice should include:

**a.** How, when, and where the act, error, or omission took place;

**b.** The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

**(2)** If a claim is received by any "insured", you must:

**a.** Immediately record the specifics of the claim and the date received; and

**b.** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

**(3)** You and any other involved "insured" must:

**a.** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

**b.** Authorize us to obtain records and other information;

**c.** Cooperate with us in the investigation, settlement, or defense of the claim or "suit"; and

**d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

**(4)** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**C. Legal Action Against Us**

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

**D. Other Insurance**

**(1)** This Coverage Part is primary insurance, except when stated, to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which applies to the loss on an excess or contingent basis, the amount of our liability under this Coverage Part shall not be reduced because of such other insurance.

**(2)** When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, we shall not be liable for a greater proportion of the loss than that stated in the applicable contribution provision below:

**a. Contribution by Equal Shares**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**b. Contribution by Limits**

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each

insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom claim is made or "suit" is brought.

**F. Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV. Definitions**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**(2)** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

**(1)** Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

**(2)** Handling records in connection with "employee benefit programs"; or

**(3)** Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Coverage territory" means:

**(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

**(2)** All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **D. (1)** above, or in a settlement to which we agree.

**E.** "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

**F.** "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**G.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**H.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**(1)** False arrest, detention, or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

**(4)** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

**(5)** Oral or written publication,' in any manner, of material that violates a person's right of privacy;

**(6)** The use of another's advertising idea in your "advertisement"; or

**(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**I.** "Property damage" means:

**(1)** Physical injury to tangible property, including all resulting loss of use of that property.

**(2)** Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**J.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

**(1)** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

# Deductible Endorsement - Occurrence



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Employee Benefits Liability Coverage Part**

It is agreed that the following deductible provisions are added to the policy as respects Employee Benefit Liability Coverage Part

   **Deductible:       $ 25000**

**1.**   The deductible amount stated above shall be deducted from the amount of all claims arising out of the same act, error, or omission. We shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable on a per act, error, or omission basis. The Aggregate Limit will not be reduced by the application of such deductible.

**2.**   The terms of this Coverage Part apply regardless of the application of the deductible amount. This includes those terms with respect to:

   **a.**   Our rights and duties with respect to the defense of "suits"; and

   **b.**   The "insured's" duties in the event of an act, error, or omission or a claim or "suit."

**3.**   We may pay any part or all of the deductible amount to effect settlement of any claim or "suit". You shall promptly reimburse us for such part of the deductible amount as has been paid by us after we notify you of our action.

# Employee Benefits Liability Amendatory Endorsement



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Employee Benefits Liability – Occurrence Coverage Form**

**A.** The following exclusion is added to Paragraph **2. Exclusions** in Section **I. Coverage – Employee Benefit Liability**:

This insurance does not apply to any:

Claim or "suit" arising out of any "employee benefit programs" you administer or provide to your clients for a fee.

**B.** Subparagraph **C.** in Section **I. Coverage – Employee Benefit Liability**, Paragraph **3. Supplementary Payments** is replaced by the following:

    **C.** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**C.** The following is added to subparagraph **(1)** in Section **III. Conditions**, Paragraph **B. Duties In The Event Of An Act, Error, Omission, Claim or Suit**

You will not be considered to have knowledge of an act, error or omission which may result in a claim until your Corporate Officer or your Risk Manager is aware of such act, error or omission.

**D.** Section **IV. Definitions** is amended as follows:

    **1.** The following is added to definition **E.** "Employee":

    "Employee" includes but is not limited to a "leased worker".  "Employee" does not include a "temporary worker" or a "PEO worker".

    **2.** The following definitions are added:

        **a.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker" or a "PEO worker".

        **b.** "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

        **c.** "PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

        **d.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

All other terms, conditions, provisions and exclusions of this policy remain the same.

# Staffing Industry Employment Practices Liability Declarations



**THIS FORM PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS. CLAIMS MUST BE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE, AND REPORTED TO THE COMPANY PURSUANT TO SUBSECTION VII.A OF THIS POLICY. THE LIMITS OF LIABILITY AND DEDUCTIBLE SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS. THE DEDUCTIBLE IS INCLUDED WITHIN THE LIMITS OF LIABILITY. PLEASE READ THE ENTIRE FORM CAREFULLY.**

**This insurance is provided by:**    Zurich American Insurance Company          (A stock insurance company)
Administrative Office
1400 American Ln
Schaumburg, IL 60196
(800) 382-2150

**Policy Number:** PRA 5854106-07                    **Renewal of:** PRA 5854106-06

Item 1.   **Named Insured and Address:**                    **Agency Name and Address:**

NAOS On-Site Staffing, LLC                    World Wide Specialty Programs, Inc.
6455 East Johns Crossing                    68 South Service Road, Suite 235
Suite 425                                     Melville, NY  11747
John Creek, GA  30097

                                                **Agency Code:** 93962000

Item 2.   **Policy Period:** From: 09/13/2019 To: 09/13/2020 12:01 A.M. local time at the address shown above.

Item 3.   **Retroactive Date** (Enter date or "None" if no Retroactive Date applies): 09/13/2011

Item 4.   **Form of Business:**   ☐Individual    ☐Corporation    ☐Partnership    ☐Joint Venture    ☒LLC    ☐Other

Item 5.   **Limits of Liability**
          A. $    2,000,000    Total Policy Period Limit
          B. $    1,000,000    Each "Claim" Limit

Item 6.   **Deductible**       $ 25,000 Each "Wrongful Employment Act" Or "Wrongful Business Environment"

Item 7.   **Coinsurance Percentage** N/A% of  "Loss" for Each "Claim"

Item 8.   **Annual Premium**       $ 46,458.00
          This premium does not include Taxes or Surcharges

Item 9.   **Endorsements Effective at Inception:**       See **Schedule of Forms and Endorsements**

Item 10.  **Notice to Company:**
          A. Address for Notice of Claim or Potential Claim
          Attn: See Attached - Staffing Liability Program Claims Procedures, WWSPI-N1-0412

BY ACCEPTANCE OF THIS POLICY, YOU AGREE THAT THE STATEMENTS IN THE DECLARATIONS AND THE APPLICATION AND ANY ATTACHMENTS HERETO ARE YOUR AGREEMENTS AND REPRESENTATIONS AND THAT THIS POLICY EMBODIES ALL AGREEMENTS EXISTING BETWEEN YOU AND US OR ANY OF OUR REPRESENTATIVES RELATING TO THIS INSURANCE.

# Staffing Industry Employment Practices Liability Coverage Form



**THIS FORM PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS. CLAIMS MUST BE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE, AND REPORTED TO THE COMPANY PURSUANT TO SUBSECTION VII.A OF THIS POLICY. THE LIMITS OF LIABILITY AND DEDUCTIBLE SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS. THE DEDUCTIBLE IS INCLUDED WITHIN THE LIMITS OF LIABILITY. PLEASE READ THE ENTIRE FORM CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout the policy, the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

Words and phrases that appear in quotations have special meaning. Refer to **SECTION IX - DEFINITIONS**.

## SECTION I – COVERAGE

### A. Insuring Agreement

1. Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of this policy, we will pay on behalf of the insured all "loss" that the insured is legally obligated to pay because of a "wrongful employment act" or "wrongful business environment" to which this insurance applies. The amount we will pay is limited as described in the Declarations and in the **Defense And Settlement**, **Limits Of Liability**, **Coinsurance**, **Deductible**, and **Other Insurance** subsections of this policy.

2. This policy applies only if:

   **a.** A "claim" for a "wrongful employment act" or "wrongful business environment" is first made and reported to the Company during the "Policy Period", or extended reporting period, if applicable, and

   **b.** The "wrongful employment act" or "wrongful business environment" from which the "claim" arises took place after the retroactive date shown in the Declarations and before the end of the "Policy Period".

   The retroactive date shown in the Declarations cannot be advanced without the written consent of the first Named Insured.

3. A "claim" shall be considered to be first made at the time when written notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

### B. Defense And Settlement

1. We have the right and duty to defend any "claim" because of a "wrongful employment act" or "wrongful business environment" to which this insurance applies, even if the allegation is groundless, false or fraudulent. We have the right and duty to select defense counsel.

2. Our duty to defend any "claim" ends when the Limits of Liability applicable to such "claim" or the Total Policy Period Limit Liability has been exhausted.

3. We have the right to investigate and, with the consent of the first Named Insured, settle any "claim" up to the applicable Limits of Liability in the manner and to the extent we, in our sole discretion, deem proper. Upon receipt by us of notice of circumstances which are likely to give rise to a "claim", we also have the right to investigate and make such a settlement even before a "claim" is made.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

4. If the Total Policy Period Limit is exhausted, we will notify the insured of all outstanding "claims" that have been reported to us and to which this insurance may apply, so that the insured can assume control of the defense of all such "claims".

5. In the event of exhaustion of the Each "Claim" Limit or the Total Policy Period Limit, so that a transfer of the control of the defense from us to you becomes appropriate, we agree to continue the defense of the "claims" during that reasonable period of time necessary for you to assume control of the defense.  However, you agree that, by so doing, we do not waive or surrender any of our rights including the right to withdraw from the defense of such "claims".  You also agree to promptly reimburse us for the expenses we incur in continuing to conduct the defense during the transition period from the time the applicable Limits of Liability were exhausted until the time you have assumed such defense.  The first Named Insured and any other insured must cooperate with us in the transfer of control of such "claims" to you.  We have no duty to defend any "claim" if such "claim" is reported to us after the applicable Limit of Liability has been exhausted.

6. We shall not settle any "claim" without your consent, which shall not be unreasonably withheld.  If you refuse to consent to any settlement recommended by us and acceptable to the claimant, and elect to further contest the "claim", our liability for such "claim" shall not exceed, subject to the Limit of Liability, 150% of the amount for which the "claim" could have been settled including "defense costs" incurred up to the date of such refusal.  A condition of this insurance that the remaining "loss" and "defense costs" in excess of the 150% of the amount for which the "claim" could have been settled and any amounts in excess of the Limit of Liability shall be borne by you at your own risk and be uninsured.  Notwithstanding the foregoing, this paragraph shall not apply until the settlement amount exceeds the Deductible amount shown in the Declarations.  If you refuse to settle, once the total "defense costs" equal 150% of the amount for which the "claim" could have been settled, subject to the Limit of Liability, plus all "defense costs" incurred up to the time we made our recommendation, we shall have the right to withdraw from the further investigation and defense thereof by tendering control of such investigation or defense to you and you agree, as a condition of the issuance of this policy, to accept such tender.  The amount of "loss" we will pay is limited as described in the Declarations and in the **Defense And Settlement**, **Limits Of Liability**, **Coinsurance**, **Deductible** and **Other Insurance** subsections of this policy.

7. "Defense costs" are part of and not in addition to the Limits of Liability and any applicable Deductible.

C. **Other Benefits**

1. **Pre-judgment Interest**

   We shall pay the entire amount of pre-judgment interest imposed on a verdict.

2. **Post-judgment Interest**

   We shall pay the entire amount of post-judgment interest calculated upon the amount for which we are liable under this Coverage Form until such time as we have paid or tendered such amount.

   Payment of pre-judgment and post-judgment interest will not reduce the Limits of Liability.

## SECTION II – WHO IS AN INSURED

A. If you are shown in the Declarations as an individual, you and your spouse are insureds, only for the conduct of a business of which you are the sole owner.

B. If you are shown in the Declarations as a corporation or organization other than a partnership, joint venture or limited liability company, you and any entity in which you own more than 50% interest at the time of the inception date of this policy and which is identified in the Declarations or by endorsement to this policy, are an insured. Your officers and directors are insureds, but only with respect to their duties as your officers or directors.

C. If you are shown in the Declarations as a partnership or joint venture, you are an insured.  Your partners or your members and their spouses are also insureds but only for the conduct of your business. However, no person or organization is covered for the conduct of any current or past partnership or joint venture not named in the Declarations.

D. If you are shown in the Declarations as a limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**E.** Any organization that you newly acquire or form during the "policy period" is an insured if you have controlling interest, but no newly acquired or formed organization is covered for:

   **1.** Any "loss" that results from an act or incident that happened or commenced before you acquired or formed it;

   **2.** Any "loss" covered under other insurance; or

   **3.** More than 90 days or the remainder of the "policy period", whichever is less, unless the first Named Insured gives us written acceptance of any special terms, conditions, exclusions, or additional premium charge we may require.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**F.** Your "employees" are insureds but only for the conduct of your business within the scope of their employment.  Your "employees'" status as insureds will be determined as of the date of the alleged "wrongful employment act" or "wrongful business environment".

**G.** Your clients are insureds, but only with respect to:

   **1.** Their "wrongful employment acts" committed against your "employees", provided there is a written agreement with that client to provide Employment Practices Liability Insurance; and/or

   **2.** A "staffing services worker's" acts committed while in the service of your client that result in a "wrongful business environment".

**H.** Any individual or organization under written contract or written agreement who provides "staffing services" on your behalf and at your direction for your clients.

## SECTION III – EXCLUSIONS

This insurance does not apply to:

**A. Physical Injury Or Property Damage**

Any liability arising out of:

   **1.** Physical injury, sickness or disease, including death resulting therefrom; or

   **2.** Damage to tangible property, including all resulting loss of use of that property or loss of use of tangible property that is not damaged.

**B. Workers' Compensation**

Any obligation under a workers' compensation, disability benefits, or unemployment compensation law, or any similar law.

**C. Contractual Liability**

Any "loss" which the insured is obligated to pay by reason of the assumption of another's liability for a "wrongful employment act" or "wrongful business environment" in a contract or agreement.  This exclusion shall not apply to liability for "loss" because of a "wrongful employment act" or "wrongful business environment" that the insured would have had even in the absence of such contract or agreement.

**D. Violation Of Law Applicable To Employers**

Any "loss" based on or arising out of or attributable to any actual or alleged violation of the responsibilities, obligations or duties imposed by:

   **1.** Any law governing workers' compensation, unemployment insurance, social security or disability benefits;

   **2.** The Employee Retirement Income Security Act (ERISA) of 1974, (except Section 510 thereof);

   **3.** The Fair Labor Standards Act (except the Equal Pay Act) and any other law concerning wage and hour practices, including but not limited to any "claim" for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of "employees" as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

4. Any law governing the rights of "employees" to engage in, or to refrain from engaging in, union or other collective activities, including but not limited to the National Labor Relations Act (NLRA), or the enforcement of any collective bargaining agreement;

5. The Workers Adjustment and Retraining Notification Act (WARN Act);

6. The Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985;

7. The Occupational Safety and Health Act (OSHA);

8. The Racketeer Influenced and Corrupt Organizations Act (RICO);

9. The Federal False Claims Act;

10. Any other federal, state, local or foreign law similar to those described in this subsection.

This exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insureds** on account of the claimant's exercise of rights pursuant to any such law.

### E.  Strikes And Lockouts

Any "loss" arising out of or associated with a lockout, strike, picket line, replacement, or other similar action in connection with labor disputes or labor negotiations. This exclusion shall not apply to a "claim" brought by an "employee" alleging "wrongful termination" or retaliation as a result of strike activity or union involvement.

### F.  Accommodations For Disabled Persons

A "wrongful employment act" or "wrongful business environment" arising out of your failure to comply with any of the accommodations for the disabled required of you by, or any expenses incurred as the result of physical modifications made to accommodate any person pursuant to, the Americans With Disabilities Act, or any amendments thereto, or any similar state or local statutes, rules or regulations to the extent that they prescribe responsibilities or duties concerning the same acts or omissions.

### G.  Uninsurable Losses

Any liability for matters deemed uninsurable under the law pursuant to which the terms of the policy are construed.

### H.  Criminal, Fraudulent Or Malicious Acts

Any liability arising out of any dishonest, fraudulent, criminal or malicious act by or at the direction of the insured, if a final and non-appealable adjudication adverse to such insured in any proceeding not brought by us establishes such a dishonest, fraudulent, criminal or malicious act; provided, however, this exclusion shall not apply to "defense costs".

### I.  Prior Knowledge

Any liability arising out of incidents or circumstances of which you had knowledge prior to the inception date of the first policy issued by the Company if continuously renewed, and which you could reasonably foresee might result in a "claim".

### J.  PEO Workers

Any "loss" arising from the actions or activities of any "PEO worker".

## SECTION IV – LIMITS OF LIABILITY

**A.** The Limits of Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. Insureds;

2. "Claims" made; or

3. Persons or organizations making "claims".

**B.  Total** Policy Period **Limit**

The amount shown in the Declarations as the Total Policy Period Limit is the most we will pay under this policy for all "claims" made and reported during the "policy period" and the Extended Reporting Period, if applicable, and for "defense costs" resulting from such "claims".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**C. Each Claim Limit**

Subject to Paragraph **B.** above, the amount shown in the Declarations as Each "Claim" Limit is the most we will pay for each "claim" made and reported arising out of one "wrongful employment act" or "wrongful business environment" and for "defense costs" resulting from that "claim".

**D.** All "claims" arising from continuous, related or repeated "wrongful employment acts" or "wrongful business environment" shall be treated as arising out of one "wrongful employment act" or "wrongful business environment". Only the policy in effect when the first such "claim" is made shall respond to all such "claims".

**E.** All "claims" arising out of one "wrongful employment act" or "wrongful business environment" shall be deemed to be made on the date that the first such "claim" was made.

**F.** The Limits of Liability of this policy apply separately to each consecutive annual period and any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Liability.

**SECTION V – COINSURANCE**

If a Coinsurance Percentage is shown in the Declarations, you shall be liable for such percentage of "loss" for each "claim", in excess of the Deductible.  Our liability for "loss" for each "claim" shall apply only to that portion of "loss" in excess of the coinsurance amount up to the Limits of Liability and we shall have no obligation for such coinsurance amount.

**SECTION VI – DEDUCTIBLE**

**A.** Our obligation to pay "loss" and "defense costs" applies only to the amount of "loss" and "defense costs" in excess of the Deductible amount shown in the Declarations.  After such Deductible has been exceeded, we will then pay the amount of "loss" plus "defense costs" in excess of the Deductible up to and until the Limit of Liability is exhausted. The Deductible is within the Each "Claim" Limit of Liability".

**B.** The Each "Wrongful Act" or "Wrongful Business Environment" Deductible amount shown in the Declarations applies to all "claims" arising out of:

**1.** The same "wrongful employment act" or "wrongful business environment"; or

**2.** A series of incidents, circumstances or behaviors which arise from a common cause;

regardless of the number of insureds involved or the number of persons, organizations or government agencies making such "claims".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "claim" based on a "wrongful employment act" or "wrongful business environment" seeking payment for "loss"; and

**2.** Your duties in the event of a "claim" for a "wrongful employment act" or "wrongful business environment",

apply irrespective of the application of the Deductible amount.

**D.** We may pay any part or all of the Deductible amount to effect settlement of any "claim".  Upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible amount as has been paid by us.

**E.** The Deductible amount shown in the Declarations shall be reduced by 50% for such "claim" subject to a maximum reduction of $25,000 if:

**1.** We and you agree to use mediation prior to suit to resolve a "claim" brought against you; and

**2.** Such "claim" is resolved thereby.

**SECTION VII – CONDITIONS**

It shall be a condition precedent to our obligations under this policy that the insured complies with all of the following, which shall apply in addition to the Common Policy Conditions:

**A. Duties In The Event Of A Claim, Or A Wrongful Employment Act Or Wrongful Business Environment That May Result In A Claim**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1.  If a "claim" is received by an insured, you must:

    **a.**  Immediately record the specifics of the "claim" and the date received; and

    **b.**   Give written notice to "us" of a "claim" as soon as practicable after the "claim" is first made against the insureds but in no event later than ninety (90) days after the expiration of the "Policy Period".

    Except as otherwise provided in this coverage form, all notices under any provision of this coverage form shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party.  Notice to the "insureds" may be given to the Named Insured at the address as shown in Item 1. of the Declarations.  Notice to the Company shall be given to the respective address shown in Item 10. of the Declarations.  Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or in the case of courier, email or fax, one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal.

2.  You and any other involved insured must:

    **a.**  Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim";

    **b.**  Authorize us to obtain records and other information;

    **c.**  Cooperate with us in the investigation, settlement, or defense of the "claim"; and

    **d.**  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of a "wrongful employment act" or "wrongful business environment" to which this insurance may also apply.

3.  No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our written consent.

4.  If you become aware of any incident which may be reasonably expected to give rise to a "claim" and for which a "claim" has not yet been received, you must notify us, in writing, as soon as practicable.  Such notice shall include as much detail as possible and shall include to the extent possible:

    **a.**  A description of the "wrongful employment act" or "wrongful business environment", including all relevant dates;

    **b.**  The identity of the persons involved in the "wrongful employment act" or "wrongful business environment", including names of potential claimants;

    **c.**  Particulars as to the reasons why you became aware of and reasonably expect a "claim" which may result from such "wrongful employment act" or "wrongful business environment";

    **d.**  The nature of the alleged or potential damages arising from such "wrongful employment act" or "wrongful business environment"; and

    **e.**  The circumstances by which the insured first became aware of the "wrongful employment act" or "wrongful business environment".

    You will not be considered to have knowledge of a "wrongful employment act" or "wrongful business environment" which may result in a claim until:

    **(1)**  If you are an individual, you or your Risk Manager,

    **(2)**  If you are a corporation, your Corporate Officer or your Risk Manager,

    **(3)**  If you are a partnership or joint venture, your partner or member, or your Risk Manager,

    **(4)**  If you are a limited liability company, your member or your Risk Manager,

    is aware of such "wrongful employment act" or "wrongful business environment".

5.  If notice of circumstances conforming to the requirements in Paragraph **4.** above is made during the "policy period", then any resulting "claim" which is subsequently made against an insured, shall be considered to be a "claim" made within the "policy period".

**B.  Other Insurance**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

If other valid and collectible insurance is available to the insured, our obligations are limited as follows:

**1. Primary Insurance**

This insurance is primary except when Paragraph **2.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we shall share with that other insurance by the method described in Paragraph **3.** below.

**2. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that:

**a.** Is effective prior to the beginning of the "policy period" shown in the Declarations;

**b.** Applies on other than a claims-made basis; and

**c.** Has a "policy period" which continues after the retroactive date shown in the Declarations.

**3. Method Of Sharing**

When this insurance is excess over other insurance, we shall have no duty under this policy to defend any "claim" that any other insurer has a duty to defend.  If no other insurer defends, we shall undertake to do so, but we shall be entitled to your rights against all those other insurers.

When this insurance is excess over the other insurance, we shall pay only our share of the amount of "loss", if any, that exceeds the sum of:

**a.** The total amount that all such other insurance would pay for the "loss" in the absence of this insurance; and

**b.** The total of all deductible and self-insured retention amounts under all other insurance.

We shall share the remaining "loss", if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Liability shown in the Declarations.

**C. Representations**

By accepting this policy, you agree that:

**1.** The representations in the Application and Declarations are accurate and complete;

**2.** We have issued this policy in reliance upon your representations; and

**3.** The representations made are binding on the Named Insured entity.  The representations made are also binding on any individual insured who signs the Application with knowledge of any misrepresentations made to us. However, such representations are not binding on any individual insured who did not sign the Application.

**D. Transfer Of Rights Of Recovery Against Others To Us**

If any insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The insured must do nothing after a "wrongful employment act" or "wrongful business environment" or a "claim" to impair them.  At our request, the insured will transfer those rights to us and help us enforce them.

**E. Bankruptcy**

The bankruptcy or insolvency of an insured or of an insured's estate will not relieve us of our obligations under this policy.  However, neither shall such bankruptcy or insolvency increase our liability with respect to the **Coinsurance** or **Deductible** provisions of this policy.

**F. Legal Action Against Us**

**1.** No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a suit asking for damages from any insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

**2.** A person or organization may sue us to recover on an agreed settlement or on a final judgment against the insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

this policy or that are in excess of the applicable Limits of Liability.  An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

We will also not be liable for the insured's share of any payment due because of a settlement or judgment for which the insured is responsible under the Deductible or Coinsurance provisions of this policy.

**G. Takeover Of Insured**

In the event that more than 50% of the controlling interest of any insured is changed during the "policy period", then this policy shall automatically terminate upon the completion of such change in control.  From that point forward, such insurance as is afforded by this policy shall apply only to "claims" which had first been made prior to that change in control.

**H. Arbitration**

If we and the insured do not agree whether coverage is provided under this policy for a "claim" made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

**1.** Pay the expenses it incurs; and

**2.** Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**I. Coverage Territory**

This policy applies to "wrongful employment acts" and "wrongful business environment" taking place anywhere in the world.

**J. Separation Of Insureds**

Except with respect to the Limits of Liability and any rights and duties specifically assigned to the first Named Insured, this insurance applies:

**1.** As if each insured were the only insured; and

**2.** Separately to each insured against whom a "claim" is made.

**K. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**L. Unintentional Failure to Disclose Information**

We will not deny coverage under this Coverage Form if you unintentionally make an error, omission or improper statement of information.

You must notify us as soon as possible after the discovery of any information that was not provided to us prior to inception of this policy.

## SECTION VIII – BASIC AND SUPPLEMENTAL EXTENDED REPORTING PERIODS

**A.** We will provide one or more Extended Reporting Periods, as described below, if:

**1.** This Coverage Form is canceled or not renewed; or

**2.** We renew or replace this Coverage Form with insurance that:

**a.** Has a Retroactive Date later than the date shown in the Declarations of this Coverage Form; or

**b.** Does not apply to "wrongful employment acts" or "wrongful business environment" on a claims-made basis.

**B. Basic Extended Reporting Period**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the "policy period" and lasts for 60 days with respect to "claims" arising from "wrongful employment acts" and "wrongful business environments" not previously reported to us.  The Basic Extended Reporting Period applies only to "wrongful employment acts" and "wrongful business environment" which took place after the Retroactive Date shown in the Declarations and before the end of the "policy period" provided a "claim" for such "wrongful employment act" or "wrongful business environment" is first made during the Basic Extended Reporting Period.

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

The Basic Extended Reporting Period does not extend the "policy period" or change the scope of coverage provided.

If the Supplemental Extended Reporting Period described in Paragraph **C.** below is purchased, the Basic Extended Reporting Period does not apply.

**C.  Supplemental Extended Reporting Period**

**1.**  A Supplemental Extended Reporting Period of 1 year, 2 years or 3 years duration is available, but only by endorsement and for an additional charge.  The additional premium for the Supplemental Extended Reporting Period will be calculated using the rules and rates effective at the inception of this policy.

**2.**  The Supplemental Extended Reporting Period starts with the end of the "policy period". It does not extend the "policy period" or change the scope of coverage provided.  The Supplemental Extended Reporting Period applies only to "wrongful employment acts" and "wrongful business environment" which took place after the Retroactive Date shown in the Declarations and before the end of the "policy period" provided a "claim" for such "wrongful employment act" or "wrongful business environment" is first made during the Supplemental Extended Reporting Period.

**3.**  You must notify us in writing of your intent to purchase a Supplemental Extended Reporting Period within 60 days after the end of the "policy period", or the date of termination, whichever comes first.

**4.**  The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. Once in effect, the Supplemental Extended Reporting Period may not be canceled or renewed.

The Supplemental Extended Reporting Period Endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

**D.**  The Basic and Supplemental Extended Reporting Periods do not reinstate or increase the Limits of Liability.

**E.**  Any "claim" first made or brought during the Basic Extended Reporting Period or the Supplemental Extended Reporting Period will be deemed to have been first made on the last day of the "policy period" which terminated immediately prior to the start of the Basic Extended Reporting Period or the Supplemental Extended Reporting Period.

**SECTION IX – DEFINITIONS**

**A.**  "Claim" means:

**1.**  A written demand or notice received by an insured in which monetary damages likely to be covered by this policy are alleged;

**2.**  A civil action, an administrative proceeding, alternative dispute resolution proceeding, or an action brought by a person or entity acting on behalf of an "employee" of the insured to which you must submit or to which you submit with our consent;

**3.**  A proceeding for injunctive or non-monetary relief; and

**4,**  An "EEOC Proceeding".

"Claim" shall not include any labor or grievance arbitration subject to a collective bargaining agreement.

A class action lawsuit is considered one "claim".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**B.** "Defense costs" means those reasonable and necessary expenses that result from the investigation, settlement, or defense of a "claim", including:

**1.** Attorney fees and expenses;

**2.** The cost of legal, administrative, or alternative dispute resolution proceedings;

**3.** The cost of appeal bonds;

**4.** The cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the Limit of Liability that applies; we have no obligation to furnish such bonds);

**5.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or suit, including actual loss of earnings up to $500 a day because of time off from work; and

**6.** Subject to Paragraph **C.** of **Section I – Coverages** of this policy, all costs taxed against any insured in a suit.

Salaries and expenses of any insured's "employees" shall not be deemed to be covered "defense costs" (other than those described in Paragraph **5.** above).

**C.** "Discrimination" means:

**1.** Termination of an employment relationship; or

**2.** A demotion; or

**3.** A failure or refusal to hire or promote or otherwise to take any action against any individual with respect to his or her compensation, terms, conditions, privileges, or opportunities of employment,

because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, or other protected category or characteristic established pursuant to any applicable United States federal, state, or local statute or ordinance.

**D.** "EEOC Proceeding" means an investigative proceeding before the Equal Employment Opportunity Commission or an adjudicatory or investigative proceeding before any similar state, federal, local or foreign government body whose purpose is to address "wrongful employment acts".

**E.** "Employee" means:

**1.** An individual whose labor or service is engaged by or directed by an insured.  This includes part-time "employees", seasonal "employees", "staffing services workers", volunteers and interns, as well as any individual employed in a supervisory, managerial, or confidential position.

**2.** An individual who is a "leased worker", but only if the insured provides indemnification to such leased individual in the same manner as is provided to the insured's "employees".

"Employee" does not include an individual who is a "PEO worker".

**F.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker" or a "PEO worker".

**G.** "Loss" means all forms of compensatory damages, monetary damages, statutory damages, and punitive damages (including exemplary and multiplied damages).  However, such punitive damages shall constitute "loss" only to the extent that they are insurable pursuant to the jurisdiction most favorable to the insured, and provided further that the jurisdiction is located in any of the following:

**1.** The jurisdiction where the damages were awarded or imposed;

**2.** The jurisdiction where any "wrongful employment act" or "wrongful business environment" took place that gave rise to such damages; or

**3.** The jurisdiction where the Company is incorporated or resides or has its principle place of business.

"Loss" includes judgments, settlements, statutory attorney fees, and "defense costs" arising out of "claims" alleging a "wrongful employment act" or "wrongful business environment".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

"Loss" shall not include:

    **a.**  Taxes, fines or penalties other than liquidated damages under the Age Discrimination in Employment Act or the Equal Pay Act; or

    **b.**  Amounts for which you or an insured are absolved from payment by any covenant, agreement or court order,

    **c.**  Costs to comply with any consent decree, injunctive, restitutionary, affirmative or other non-monetary relief or any agreement to provide such relief; or

    **d.**  Compensation earned by the claimant in the course of employment but not paid by you or an insured, including but not limited to any unpaid salary, overtime, bonus, wages, severance pay, retirement benefits, unpaid reimbursement of Employee expenses, vacation days, or sick days;

    **e.**  Medical insurance or other insurance plan benefits (or the equivalent value thereof) to which the claimant allegedly was entitled or should have been entitled;

    **f.**  Amounts awarded pursuant to a labor or grievance arbitration pursuant to a collective bargaining agreement; or

    **g.**  Vested and non-vested stock options, retirement benefits, severance pay, bonus, prerequisites, commissions, fringe benefits, vacation days, or sick days.

**H.**  "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

**I.**  "PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

**J.**  "Policy Period" means the period set forth in the Declarations or any shorter period resulting from a termination of this policy.

**K.**  "Sexual harassment" means unwelcome sexual advances and/or requests for sexual favors or other verbal or physical conduct of a sexual nature that:

    **1.**  Are made a condition of employment; and/or

    **2.**  Are used as a basis for employment decisions; and/or

    **3.**  Create a work environment that interferes with performance or creates an intimidating, hostile, or offensive work environment.

**L.**  "Staffing services" means services provided by a staffing company to their clients including but not limited to:

    **1.**  Staffing related administrative services provided by an Administrative Services Organization (ASO);

    **2.**  Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client;

    **3.**  Temporary, contingent or contract placement services;

    **4.**  Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for "staffing services workers";

    **5.**  Services performed on behalf of your client by a "staffing services worker" who is not a direct hire or permanent placement;

    **6.**  Services performed for a client company to supply that client company with a "staffing services worker".

**M.**  "Staffing services worker" means a person who is furnished by you to your client to perform the duties to which you have agreed.

**N.**  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**O.**  "Workplace torts" means:

    **1.**  Retaliation, defamation or infliction of emotional distress;

    **2.**  Invasion of privacy;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**3.** Negative evaluation, wrongful discipline or wrongful reference;

**4.** Failure to grant tenure, wrongful failure to employ or promote or wrongful demotion;

**5.** Constructive discharge;

**6.** Whistle blowing;

**7.** Workplace harassment or "sexual harassment";

**8.** Bullying;

**9.** Libel, slander or disparagement;

**10.** False imprisonment or malicious prosecution;

**11.** Failure to adopt or enforce anti-"discrimination" practices, policies or procedures if these allegations are made in conjunction with a "claim" alleging "discrimination"; or

**12.** "Wrongful termination".

**P.** "Wrongful business environment" means allegations of direct, indirect, intentional or unintentional "discrimination", "sexual harassment" or any other civil rights violations committed by an insured and brought by the insured's customer, client or any other individual which results from exposure to the business environment of the insured or the insured's client.

**Q.** "Wrongful employment act" means:

**1.** Your "employee's", former "employee's", or an employment applicant's allegation of:

**a.** "Discrimination" by an insured; or

**b.** Harassment, including "sexual harassment", by an insured; or

**c.** "Workplace torts" by an insured.

**2.** Your former "employee's" allegation of "wrongful termination" by an insured.

An allegation means the lodging of an oral or written complaint or charge with your:

**a.** Management; or

**b.** Corporate legal or human resource departments.

**R.** "Wrongful termination" means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.  "Wrongful termination" shall include, but shall not be limited to:

**1.** Breach of an implied employment contract;

**2.** Retaliation; or

**3.** The filing of a claim under federal, state, local, or foreign whistleblower laws.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Georgia Changes



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Staffing Industry Employment Practices Liability Coverage Form (Claims-Made)**

Paragraph **H.** in **Section VII – Conditions** is deleted in its entirety.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Stopgap Employer Liability Coverage



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in **bold face** have special meaning. Refer to **SECTION V - DEFINITIONS.**

### SCHEDULE

**State(s)**          Ohio

**Location(s)**       ALL

**Limits of Liability:**

| | | |
|---|---|---|
| Bodily Injury by Accident - Each Accident: | $ | 1,000,000 |
| Bodily Injury by Disease - Policy Limit: | $ | 1,000,000 |
| Bodily Injury by Disease - Each Employee: | $ | 1,000,000 |

**Deposit Premium:**      **$    50.00**

**Minimum Premium:**      **$    50.00**

# STOP GAP EMPLOYERS LIABILITY COVERAGE

**SECTION I – COVERAGE**

**COVERAGE S. – STOP GAP EMPLOYERS LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated by the law of the state(s) shown in the Declarations to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

      (1) The:

         (a) "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

         (b) "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

         (c) "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of the state(s) shown in the Declarations; and

      (2) The:

         (a) "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

         (b) "Bodily injury by disease" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

   c. The damages we will pay, where recovery is permitted by law, include damages:

      (1) For:

         (a) Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

         (b) Care and loss of services; and

         (c) Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

         provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

      (2) Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

2. **Exclusions**

   This insurance does not apply to:

   a. **Intentional Injury**

      "Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you.

      However, this exclusion only applies to "bodily injury by accident" or "bodily injury by disease" caused or aggravated by an act committed by you where that injury or aggravation of injury  was substantially certain to result from that act.

 Includes copyrighted material of ISO Properties, Inc. with its permission   ☐

For injury to "employees" subject to Ohio Workers' Compensation Laws, this exclusion applies only if the act causing or aggravating the injury is of deliberate intent as defined by the laws of that state.

For injury to "employees" subject to West Virginia Workers' Compensation Laws, this exclusion applies only if the act causing or aggravating the injury is of deliberate intent as defined by SB744 paragraph (2)(ii).

**b. Fines Or Penalties**

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

**c. Statutory Obligations**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Contractual Liability**

Liability assumed by you under any contract or agreement.

**e. Violation Of Law**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment decisions or personnel decisions of the insured.

**g. Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

**(1)** Deprived of common law defenses; or

**(2)** Otherwise subject to penalty;

because of your failure to secure your obligations under, or other failure to comply with, any "workers compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

**(1)** Knowingly employed by you in violation of any law pertaining to the minimum age of employment or employees; or

**(2)** Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

**(1)** The Federal Employer's Liability Act (45 USC Section 51-60);

**(2)** The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

**(3)** The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

**(4)** The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

**(5)** The Defense Base Act (42 USC Sections 1651-1654);

**(6)** The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

**(7)** The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

**(8)** Any other workers compensation, unemployment compensation or disability laws or any similar law; or

**(9)** Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Exemplary damages or punitive damages, or any other damages that are determined, in part, through the application of a multiplier.,

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

**l. Asbestos**

"Bodily injury by accident" or "bodily injury by disease" arising out of asbestos, or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which this coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II – WHO IS AN INSURED

If you are designated in the Declarations as:

**1.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**2.** A partnership or joint venture, you are insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**3.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**4.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Bodily Injury By Accident – Each Accident Limit shown in the Declarations is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

**3.** The Bodily Injury By Disease – Aggregate Limit shown in the Declarations is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

**4.** Subject to **3.** above, the Bodily Injury By Disease – Each Employee Limit shown in the Declarations is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part. However, this condition shall not affect our ability to assert or invoke any applicable defense to liability on behalf of the insured.

**2. Duties In The Event Of Injury, Claim Suit**

**a.** You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

**(5)** Do nothing after an injury occurs that would interfere with our right to recover from others.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

This insurance is primary, and our obligations are not affected unless any of the other insurance or self-insurance is also primary.

If all of the other insurance or self-insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance or self-insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

**2.** "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

**3.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

**4.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**5.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**6.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**7.** "Suit" means a civil proceeding in which damages because of "bodily injury by accident" or "bodily injury by disease" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**8.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**9.** "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of the state(s) shown in the Declarations. This does not include provisions of any law providing non-occupational disability benefits.

# Staffing Industry Professional Liability Declarations



**Policy Number:** PRA 5854106-07

Item 1.   Insured by the stock company below and hereinafter call the Company:
Zurich American Insurance Company

Item 2.   **Named Insured:**                                    **Agency Name:**
NAOS On-Site Staffing, LLC                        World Wide Specialty Programs, Inc.

**Agency Code:** 93962000

Item 3.   **Policy Period:**      From: 09/13/2019 To: 09/13/2020 12:01 A.M. local time at the insured's address shown above.

Item 4.   **Limit of Liability**
$        1,000,000    Each "Claim"
$        2,000,000    Aggregate

Item 5.   **Deductible**
$            25,000    Each "Wrongful Act"

Item 6.   **Annual Premium**        $ 10,231.00
This premium does not include Taxes or Surcharges

Item 7.   **Endorsements Effective at Inception:        See Schedule of Forms and Endorsements**

Date Issued: 09/13/2019

Includes copyrighted material of Insurance Services Office , Inc., with its permission.

# Staffing Industry Professional Liability Coverage Form



Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

Words and phrases that appear in quotations have special meaning.  Refer to **SECTION VI – DEFINITIONS**.

## SECTION I – INSURING AGREEMENTS

### A. Coverage

1. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any "claim" arising from a "wrongful act" to which this insurance applies.  The "wrongful act" must take place:

    a. During the policy period; and

    b. In the "coverage territory".

2. The amount we will pay for "damages" is limited as described in **SECTION IV – LIMITS OF LIABILITY AND DEDUCTIBLE**.

3. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **D. Disciplinary Proceedings** or **E. Supplementary Payments** of this section.

### B. Defense And Investigation

We shall have the right and duty to defend the insured against any "claim" based on a "wrongful act" seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" are groundless, false or fraudulent.

We shall have the right to select defense counsel for the investigation, defense or settlement of the "claim" and we shall pay all reasonable "claim expenses" arising from the "claim".

We shall have the right to conduct such investigation or negotiation of any "claim" as we deem expedient.  We shall not be obligated to:

1. Pay any "damages" or "claim expenses"; or

2. Defend or continue to defend any "claim",

after our Limit of Liability has been used up by payment or by deposit in a court having jurisdiction of sums reflecting the remaining applicable Limit of Liability.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **D. Disciplinary Proceedings** or **E. Supplementary Payments** of this section.

### C. Consent To Settle

We shall not settle any "claim" without your consent, which consent should not be unreasonably withheld.  If you refuse to consent to any settlement recommended by us, and acceptable to the claimant, and elect to further contest the "claim", our liability for such "claim" shall not exceed, subject to the Limit of Liability, 150% of the amount for which the "claim" could have been settled including "claim expenses" incurred up to the date of such refusal.  A condition of this insurance that the remaining "damages" and "claim expenses" in excess of the 150% of the amount for which the "claim" could have been settled and any amounts in excess of the Limit of Liability shall be borne by you at your own risk and be uninsured.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Notwithstanding the foregoing, this paragraph shall not apply until the settlement amount exceeds the Deductible amount shown in the Declarations.  If you refuse to settle, once the total "claim expenses" equal 150% of the amount for which the "claim" could have been settled, subject to the Limit of Liability, plus all "claim expenses" incurred up to the time we made our recommendation, we shall have the right to withdraw from the further investigation and defense thereof by tendering control of such investigation or defense to you and you agree, as a condition of the issuance of this policy, to accept such tender.

Our payment for "damages" under this provision is subject to **SECTION IV – LIMITS OF LIABILITY AND DEDUCTIBLE**.

You shall not, except at your own cost:

**1.** Make any payment;

**2.** Make any admission;

**3.** Admit liability;

**4.** Waive any rights;

**5.** Settle any "claim";

**6.** Assume any obligation; or

**7.** Incur any expense, other than for first aid,

without our prior written consent.

**D. Disciplinary Proceedings**

**1.** If a "wrongful act" occurs during the policy period, and results in the commencement of a "disciplinary proceeding" against the insured, we will reimburse you for reasonable "claim expenses" incurred by the insured in responding to such "disciplinary proceeding".  We will not indemnify any insured for "claim expenses" in which the final resolution of the "disciplinary proceeding" results in the suspension or revocation of the insured's license.  We will have no obligation to pay "claim expenses" other than upon the final resolution of the "disciplinary proceeding" as described herein.

**2.** The maximum payment by us pursuant to this extension of coverage shall be $10,000 for each policy year, regardless of the number of "disciplinary proceedings" or insureds.  Any payment by us pursuant to this extension of coverage shall not apply to the Deductible amount shown in the Declarations and shall not reduce the Limits of Liability.  We will not pay "damages" under this extension of coverage.

**E. Supplementary Payments**

We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend:

**1.** All "claim expenses" we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Liability.  We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $500 a day because of time off from work.  The maximum annual amount available will not exceed $10,000 in the aggregate regardless of the number of "claims", "suits" or the number of insureds required to assist in the investigation or defense.

**4.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against you.

**5.** Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Liability, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

7.  In the event the insured receives a subpoena for documents or testimony arising out of "staffing services" rendered by you during the policy period and you would like our assistance in responding to the subpoena, you may provide us with a copy of the subpoena and we will retain an attorney to provide advice regarding the production of documents, to prepare the insured for sworn testimony and to represent the insured at depositions, provided that:

    a.  The subpoena arises out of a "suit" to which you are not a party; and

    b.  You have not been engaged to provide advice or testimony in connection with the "suit", nor have you provided such advice or testimony in the past.

    The maximum amount available under this provision will not exceed $25,000 in the aggregate.  Any notice you provide us of such subpoena shall be deemed notification of a "wrongful act".

    These payments will not reduce the Limits of Liability.

## SECTION II – WHO IS AN INSURED

A.  If you are designated in the Declarations as:

    1.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are a sole owner.

    2.  A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    3.  A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    4.  An organization, other than a partnership, joint venture, or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    5.  A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties are trustees.

B.  Each of the following is also an insured:

    1.  Your volunteer workers or interns only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

    2.  Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this Coverage Part.

    3.  Any individual or organization under written contract or written agreement who provides "staffing services" on your behalf and at your direction for your clients.

    4.  Any organization acquired or created by you after the inception of this policy in which you maintain ownership or majority interest to conduct your "staffing services", but only for 90 days after its acquisition or creation or the end of the policy period, whichever is earlier, unless you have provided us with full particulars of this new organization and agreed to any policy provision or payment of additional premium required by us.

    However, coverage does not apply to a "wrongful act" that occurred before you acquired or formed the organization.

## SECTION III – EXCLUSIONS

This insurance shall not apply to any "claim", based upon or arising out of, in whole or in part:

A.  Any action made by or on behalf of another insured or "PEO Worker", in any capacity.

B.  Any actual or alleged "personal and advertising injury".

C.  Any actual or alleged "bodily injury" or "property damage".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**D.** Criminal, fraudulent, malicious, dishonest or intentional acts, errors or omissions.  However, this exclusion shall not apply to any insured that did not:

   **1.** Personally commit; or

   **2.** Personally participate in; or

   **3.** Personally consent to; or

   **4**. Remain passive after having personal knowledge of,

any such acts, errors or omissions.

This exclusion does not affect our duty to defend, in accordance with **SECTION I – INSURING AGREEMENTS**, Paragraph **B. Defense And Investigation**, an insured prior to determining, through final adjudication, that the insured is responsible for a criminal, fraudulent, malicious, dishonest or intentional act, error or omission.

**E.** Any actual or alleged loss of money and/or negotiable instruments given by any of your clients that are a bank, stockbroker, brokerage house or any other financial institution, or any of their subsidiary companies, corporations, or agencies to any of your "employees" or an independent contractor for purpose of transportation.

**F.** Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**G.** The administration of or failure to administer any Employee Benefit Plan.  However, this exclusion shall not apply to a "PEO service" or Administrative Services Organization (ASO) providing staffing related administrative services, that:

   **1.** Does not have Employee Benefit Plan funds or benefits that are self-funded; and

   **2.** Does not manage or invest Employee Benefit Plan funds.

**H.** Any actual or alleged "wrongful employment act".

**I.** Any liability assumed by an insured under any contract or agreement, unless such liability would have attached to the insured by law in the absence of such contract or agreement.

**J.** Any actual, alleged, or threatened existence, emission, discharge, dispersal, seepage, migration, release, escape, exposure to, generation, storage, transportation, treatment, removal, disposal, processing, or handling of "pollutants":

   **1.** At or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, you, or controlled or customarily used by you, and the ways immediately adjoining such premises, site, or location;

   **2.** At or from any premises, site, or location that is or was at any time used by an insured or others for the handling, storage, disposal, processing, or treatment of waste;

   **3.** That are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or by or for any person or organization for whom you may be legally responsible;

   **4.** At or from any premises, site, or location on which you or any contractors or sub-contractors working directly or indirectly on your behalf were or are performing operations:

      **a.** If the "pollutants" were or are brought on or to the premises, site or location in connection with such operations by you or by such contractor or subcontractor; or

      **b.** If the operations are to clean up, test for, monitor, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants";

   **5.** Any costs or expenses to clean up, test for, monitor, remove, contain, treat, detoxify, neutralize, or in any other way respond to or assess the effects of "pollutants" generally, or with respect to the actual, alleged, or threatened existence, emission, discharge, dispersal, seepage, migration, release, or escape of "pollutants";

   **6.** Any costs or expenses to clean up, test for, monitor, remove, contain, treat, detoxify, neutralize, or in any other way respond to or assess the effects of "pollutants" with respect to the renovation, rehabilitation, reconstruction, remodeling, expansion, or demolition, in whole or in part, of your premises or of any premises, site, or location that is or was at any time owned or occupied by, or rented or loaned to, you, or controlled or customarily used by you, and the ways immediately adjoining such premises, site, or location;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

7.  Any costs or expenses arising out of any request, demand, order or directive by any person, organization, or governmental authority that any insured or others clean up, test for, monitor, remove, contain, treat, detoxify, neutralize, or in any other way respond to or assess the effects of "pollutants";

8.  Any "claim" by or on behalf of a governmental authority for "damages" because of cleaning up, testing for, monitoring, removing, containing, treating, detoxifying, neutralizing, or in any other way responding to or assessing the effects of "pollutants".

K.  Any actual or alleged piracy, infringement of a patent, copyright, trademark, servicemark, trade dress, trade name, trade secret or any other intellectual property rights.

L.  Any "claim" brought by a franchisor against its franchisee or brought by a franchisee against its franchisor.

M.  Injury, however caused, arising, directly or indirectly, out of:

1.  War, including undeclared or civil war;

2.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3.  Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

N.  Services performed by any:

1.  Doctor, dentist, armed security guard, pilot, person engaged in pyrotechnic activities or anyone acting as a general contractor;

2.  Engineer or architect with signoff authority; or

3.  Consultant with signoff authority on final business decisions.

O.  The actions or activities of any "PEO worker".

This exclusion does not affect our duty to defend, in accordance with **SECTION I – INSURING AGREEMENTS**, Paragraph **B. Defense And Investigation**, an insured providing "PEO services".

P.  Any actual or alleged violation of:

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4.  Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Q.  Any actual or alleged "abusive act" or any loss, cost or expense arising out of or relating in any way to an "abusive act".

R.  From any "wrongful act", circumstance or event:

1.  Committed;

2.  Omitted; or

3.  Occurring

prior to the policy effective date.

S.  Any:

1.  Actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**2.** Sums that any insured or other entity must pay, repay or reimburse because of any request, demand, order, statutory or regulatory requirement, direction or determination that any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**3.** Other loss, cost or expense related in any way to asbestos.

## SECTION IV – LIMITS OF LIABILITY AND DEDUCTIBLE

### A. Limits Of Liability

**1.** Each "Claim": Our liability for "damages" for each "claim" covered by this insurance shall not exceed, subject to the Deductible, the amount shown in the Declarations for Each "Claim".

**2.** Aggregate: Our liability for the combined total of all "damages" for all "claims" covered by this insurance shall not exceed, subject to paragraph **1.** above, the amount shown in the Declarations for Aggregate.

**3.** If the Limit of Liability is used up prior to settlement or judgment of any pending "claim", our obligations under this Coverage Form shall end and we shall have the right to withdraw from the further investigation or defense of any pending "claim" by giving control of such investigation or defense to you, and you agree, as a condition to the issuance of this policy, to accept such control.

### B. Deductible

**1.** Our obligation to pay "damages" and "claim expenses" applies only to the amount of "damages" and "claim expenses" in excess of the Deductible amount shown in the Declarations.  We will then pay:

    **a.** The amount of "damages" in excess of the Deductible, up to the Limit of Liability; plus

    **b.** "Claim expenses" in excess of the Deductible until the limit for "damages" is exhausted.

**2.** The Each "Wrongful Act" Deductible amount shown in the Declarations applies to all "claims" arising out of:

    **a.** The same "wrongful act"; or

    **b.** A series of incidents, circumstances or behaviors which arise from a common cause;

regardless of the number of insureds involved or the number of persons, organizations or government agencies making such "claims".

**3.** The terms of this insurance, including those with respect to:

    **a.** Our right and duty to defend the insured against any "claim" based on a "wrongful act" seeking "damages"; and

    **b.** Your duties in the event of a "wrongful act", "claim", "disciplinary proceeding" or "suit",

apply irrespective of the application of the Deductible amount.

**4.** We may pay any part or all of the Deductible amount to effect settlement of any "claim".  Upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible amount as has been paid by us.

**5.** The Deductible amount shown in the Declarations shall be reduced by 50% for such "claim" subject to a maximum reduction of $25,000 if:

    **a.** We and you agree to use mediation prior to "suit" to resolve a "claim" brought against you; and

    **b.** Such "claim" is resolved thereby.

## SECTION V – CONDITIONS

### A. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Form.

### B. Duties In The Event Of Wrongful Act, Claim, Disciplinary Proceeding Or Suit

**1.** You must see to it that we are notified as soon as practicable of a "wrongful act" which may result in a "claim". To the extent possible, the notice should include:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    **a.** The description of the "wrongful act" including but not limited to:

        **(1)** How, when and where the "wrongful act" took place;

        **(2)** The nature and location of any injury or damage arising out of the "wrongful act"; and

        **(3)** The date and circumstance by which you first became aware of the "wrongful act";

    **b.** The names and addresses of any injured persons, claimants, potential claimants, or witnesses; and

    **c.** The identities of the responsible insureds.

You will not be considered to have knowledge of a "wrongful act" which may result in a claim until:

        **(1)** If you are an individual, you or your Risk Manager,

        **(2)** If you are a corporation, your Corporate Officer or your Risk Manager,

        **(3)** If you are a partnership or joint venture, your partner or member, or your Risk Manager,

        **(4)** If you are a limited liability company, your member or your Risk Manager,

is aware of such loss or "occurrence".

**2.** If a "claim" is made, "suit" is brought or a "disciplinary proceeding" is brought against any insured, you must:

    **a.** Immediately record the specifics of the "claim", "suit" or "disciplinary proceeding" and the date received; and

    **b.** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim", "suit" or "disciplinary proceeding" as soon as practicable.

**3.** You and any other involved insured must:

    **a.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim", "suit" or "disciplinary proceeding";

    **b.** Authorize us to obtain records and other information;

    **c.** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

    **d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**C. Legal Action Against Us**

No person or organization has a right under this Coverage Form to:

**1.** Join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

**2.** Sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for "damages" that are not payable under the terms of this Coverage Form or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**D. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**E. Other Insurance**

**1.** This insurance will apply only as excess insurance over any other valid and collectible insurance.

**2.** However, if insurance similar to this insurance is held by one of your clients, this insurance is primary to that other insurance and that other insurance shall not contribute to amounts payable under this insurance for liability arising out of an insured's "wrongful act".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

   **3.**  If one or more other policies written by the Zurich Financial Services Group applies to the same "claim", including any extended reporting period of such policy or policies, and the other policies are not specifically written as primary or excess of this Coverage Form, then only the Coverage Form having the highest limit of liability shall apply.

**F. Representations**

By accepting this policy, you agree:

   **1.**  The statements in the Declarations are accurate and complete;

   **2.**  Those statements are based upon representations you made to us; and

   **3.**  We have issued this policy in reliance upon your representations.

We will not deny coverage under this Coverage Form unless such misrepresentations or omissions is made with the intent to deceive, or which materially affect either the acceptance of the risk or the hazard assumed by us under the Policy.

**G. Separation Of Insureds**

Except with respect to the Limits of Liability, and any rights or duties specifically assigned in this Coverage Form to the first Named Insured, this insurance applies:

   **1.**  As if each Named Insured were the only Named Insured; and

   **2.**  Separately to each insured against whom a "claim" is made or "suit" is brought.

**H. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us.  You must do nothing after loss to impair them.  At our request, you will bring "suit" or transfer those rights to us and help us enforce them.

**I. When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION VI – DEFINITIONS**

**A.** "Abusive act" means any act or series of acts of actual or threatened abuse or molestation done to any person, including any act or series of acts of actual or threatened sexual abuse or molestation done to any person by anyone who causes or attempts to cause the person to engage in a sexual act:

   **1.**  Without the consent of or by threatening the person, placing the person in fear or asserting undue influence over the person;

   **2.**  If that person is incapable of appraising the nature of the conduct or is physically incapable of declining participation in or communicating unwillingness to engage in the sexual act; or

   **3.**  By engaging in or attempting to engage in lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of any person.

**B.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**C.** "Claim" means a:

   **1.**  Written demand for money resulting from a "wrongful act"; or

   **2.**  "Suit" resulting from a "wrongful act".

Two or more "claims" arising out of a single "wrongful act", or a series of continuous, repeated, related, interrelated, or causally or logically connected "wrongful acts" that give rise to one or more "claims" shall be treated as a single "claim".

**D.** "Claim expenses" means:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-SIL-173-B CW (01/19)
Page 8 of 11

    **1.** Fees, costs and expenses charged by attorneys retained or approved by us; and

    **2.** Reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "claim".

**E.** "Coverage territory" means anywhere in the world.

**F.** "Damages" means the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with our assistance and approval.  "Damages" do not include:

    **1.** Compensation for injury to or destruction of tangible property or loss of use or value thereof;

    **2.** Personal profit or advantage to which the insured is not legally entitled;

    **3.** Criminal or civil fines, penalties (statutory or otherwise), fees or sanctions;

    **4.** Matters deemed uninsurable;

    **5.** Fees, costs and expenses paid to or incurred or charged by the insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, setoff or otherwise, and injuries that are a consequence of any of the foregoing;

    **6.** Any form of equitable or non-monetary relief; or

    **7.** "Claim expenses".

**G.** "Disciplinary proceeding" means any proceeding brought by a regulatory or disciplinary official, board, or agency to investigate charges of professional misconduct against the insured.

**H.** "Discrimination" means:

    **1.** Termination of an employment relationship; or

    **2.** A demotion; or

    **3.** A failure or refusal to hire or promote or otherwise to take any action against any individual with respect to his or her compensation, terms, conditions, privileges, or opportunities of employment,

because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, or other protected category or characteristic established pursuant to any applicable United States federal, state, or local statute or ordinance.

**I.** "Employee" includes but is not limited to a "leased worker" and a "staffing services worker".  "Employee" does not include a "temporary worker" or a "PEO worker".

**J.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**K.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker" or a "PEO worker".

**L.** "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

**M.** "PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

**N.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **1.** False arrest, detention or imprisonment;

    **2.** Malicious prosecution;

    **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **4.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    **5.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **6.**  The use of another's advertising idea in your advertisement; or

    **7.**  Infringing upon another's copyright, trade dress or slogan in your advertisement.

**O.**  "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**P.**  "Property damage" means:

    **1.**  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **2.**  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "wrongful act" that caused it.

For purposes of this definition, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and application software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Q.**  "Staffing services" means services provided by a staffing company to their clients including but not limited to:

    **1.**  Staffing related administrative services provided by an Administrative Services Organization (ASO);

    **2.**  "PEO service";

    **3.**  Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client;

    **4.**  Temporary, contingent or contract placement services;

    **5.**  Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for "staffing services workers";

    **6.**  Services performed on behalf of your client by a "staffing services worker" who is not a direct hire or permanent placement;

    **7.**  Services performed for a client company to supply that client company with a "staffing services worker".

**R.**  "Staffing services worker" means a person who is furnished by you to your client to perform the duties to which you have agreed.

**S.**  "Suit" means a civil proceeding in which "damages" because of injury to which this insurance applies are alleged. "Suit" includes:

    **1.**  An arbitration proceeding in which such "damages" are claimed and to which the insured must submit or does submit with our consent; or

    **2.**  Any other alternative dispute resolution proceeding in which "damages" are claimed and the insured submits with our consent.

**T.**  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**U.**  "Workplace torts" means:

    **1.**  Retaliation, defamation or infliction of emotional distress;

    **2.**  Invasion of privacy;

    **3.**  Negligent evaluation, wrongful discipline or wrongful reference;

    **4.**  Failure to grant tenure, wrongful failure to employ or promote or wrongful demotion;

    **5.**  Constructive discharge;

    **6.**  Whistle blowing;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**7.** Workplace harassment or sexual harassment;

**8.** Libel, slander or disparagement;

**9.** False imprisonment or malicious prosecution;

**10.** Failure to adopt or enforce anti-"discrimination" practices, policies or procedures if these allegations are made in conjunction with a "claim" alleging "discrimination"; or

**11.** "Wrongful termination".

**V.** "Wrongful act" means any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing "staffing services" to your clients by you or by any person for whose acts you are legally responsible.

**W.** "Wrongful employment act" means:

**1.** Your "employee's", former "employee's", or an employment applicant's allegation of:

    **a.** "Discrimination" by an insured; or

    **b.** Harassment, including sexual harassment, by an insured; or

    **c.** "Workplace torts" by an insured; or

**2.** Your former "employee's" allegation of "wrongful termination" by an insured.

An allegation means the lodging of an oral or written complaint or charge with your:

    **a.** Management or supervisory "employees"; or

    **b.** Corporate legal or human resource departments.

**X.** "Wrongful termination" means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

"Wrongful termination" shall include but shall not be limited to:

**1.** Breach of an implied employment contract;

**2.** Retaliation; or

**3.** The filing of a claim under federal, state, local or foreign whistleblower laws.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



# Designated Services Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**Named Insured and Mailing Address:**

NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

**Producer:**

World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Staffing Industry Professional Liability Coverage Form**
**Staffing Industry Professional Liability Coverage Form (Claims-Made)**

**SCHEDULE**

**Excluded Services:**

Accountants
Architects and  Engineers
Attorneys
Programmers

This insurance shall not apply to any "claim", based upon or arising out of, in whole or in part, the rendering of or failure to render any of the services listed in the Schedule above.

All other terms, conditions, provisions and exclusions of this policy remain the same.



# First Dollar Defense Coverage

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

Named Insured and Mailing Address:
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

Producer:
World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Staffing Industry Professional Liability Coverage Form**
**Staffing Industry Professional Liability Coverage Form (Claims-Made)**

**Section IV - Limits Of Liability And Deductible**, Paragraph **B. Deductible**, subparagraph **1.** is replaced by the following:

**1.** Our obligation to pay "damages" applies only to the amount of "damages" in excess of the Deductible amount shown in the Declarations.  We will then pay the amount of "damages" in excess of the Deductible, up to the Limit of Liability.

Includes copyrighted material of Insurance Services Office , Inc. with its permission.



**ABUSIVE ACT LIABILITY COVERAGE FORM
DECLARATIONS**

Administrative Office
1400 American Ln
Schaumburg, IL 60196
(800) 382-2150

Policy Number:   PRA 5854106-07

Named Insured:     NAOS On-Site Staffing, LLC

Policy Period:     Coverage begins     09/13/2019               at 12:01 A.M.

Coverage ends      09/13/2020               at 12:01 A.M.

Producer Name:     World Wide Specialty Programs, Inc.          Producer
Number:     93962000

| | | |
|---|---|---|
| **Item 1.** | Business Description: | Staffing Services |

**Item 2.**    Limits of Insurance
Abusive Act Liability

| | |
|---|---|
| Each Abusive Act Limit | $1,000,000 |
| Aggregate Limit | $1,000,000 |
| Each Abusive Act Retention | $1,000 |
| Special Supplementary Payment Limit | $10,000 |

**Item 3.**    Form of business and Location of Premises

Form of business:          Staffing Services

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 4. and**    Form(s) and Endorsement(s) made a part of this Policy at time of issue: **See Schedule of Forms Endorsements**

**Item 5.**    Premiums

| | | |
|---|---|---|
| Abusive Act Liability Coverage Part Premium: $ | | 1,456.00 |
| Other Premium: | | N/A |
| Total Premium: $ | | 1,456.00 |



| SCHEDULE OF INSUREDS | *Administrative Office*<br>*1400 American Ln*<br>*Schaumburg, IL 60196*<br>*(800) 382-2150* |
|---|---|

| | Policy Number: | PRA 5854106-07 |
|---|---|---|

**Abusive Act Liability**

| Insured/Location | Limits of Insurance | | |
|---|---|---|---|
| 1. ALL | Each Abusive Act Limit | $ | 1,000,000 |
| | Aggregate Limit | $ | 1,000,000 |
| | Each Abusive Act Retention | $ | 1,000 |
| | Special Supplementary Payment Limit | $ | 10,000 |
| | Alleged Participant Each Abusive Act Limit | $ | N/A |
| | Alleged Participant Aggregate Limit | $ | N/A |
| 2. | Each Abusive Act Limit | $ | |
| | Aggregate Limit | $ | |
| | Each Abusive Act Retention | $ | |
| | Special Supplementary Payment Limit | $ | |
| | Alleged Participant Each Abusive Act Limit | $ | |
| | Alleged Participant Aggregate Limit | $ | |
| 3. | Each Abusive Act Limit | $ | |
| | Aggregate Limit | $ | |
| | Each Abusive Act Retention | $ | |
| | Special Supplementary Payment Limit | $ | |
| | Alleged Participant Each Abusive Act Limit | $ | |
| | Alleged Participant Aggregate Limit | $ | |
| 4. | Each Abusive Act Limit | $ | |
| | Aggregate Limit | $ | |
| | Each Abusive Act Retention | $ | |
| | Special Supplementary Payment Limit | $ | |
| | Alleged Participant Each Abusive Act Limit | $ | |
| | Alleged Participant Aggregate Limit | $ | |

# Abusive Act Liability Coverage Form



Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## ABUSIVE ACT LIABILITY

1.  **Insuring Agreement**

    **a.**  We will pay "loss" because of "injury" resulting from an "abusive act" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" for "loss" resulting from the "abusive act".  However, we will have no duty to defend the insured against any "suit" for "loss" to which this insurance does not apply. We may, at our discretion, investigate and settle any claim or "suit" that may result.  But:

      **(1)**  The amount we will pay for "loss" is limited as described in Section **III** – Limits Of Insurance; and

      **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of "loss".

      No other obligation or liability to pay "losses" or perform acts and services or pay any other amounts is covered unless explicitly provided for under Supplementary Payments or Special Supplementary Payments.

    **b.**  This insurance applies only if:

      **(1)**  The "injury" caused by an "abusive act" begins during a "policy year" within the "policy period"; and

      **(2)**  The "abusive act" that causes the "injury" begins during the same "policy year".

    **c.**  "Injury" caused by an "abusive act" which begins during any "policy year" includes any continuation, change or resumption of that "injury" from the same  "abusive act" after the end of that "policy year."  Only the Limits of Insurance of the "policy year" in which the "abusive act" begins will apply to all such "loss" because of "injury" occurring during and subsequent to that "policy year".

    **d.**  "Loss" because of "injury" includes "loss" claimed by any person or organization for care, loss of services, or death resulting at any time from the "injury".

2.  **Exclusions**

    This insurance does not apply to:

    **a.**  "Injury" for which the insured is obligated to pay "loss" by reason of the assumption of liability under any contract or agreement, except and then only to the extent that the insured would have been liable in the absence of such contract or agreement;

    **b.**  Any claim made or "suit" brought by you or on your behalf or in the name or right of any insured, provided, however, this exclusion will not apply to any claim made or "suit" brought by a "volunteer";

    **c.**  Any claim or "suit" based upon, arising out of or attributable, in whole or in part, to any "abusive act" that was alleged in or formed the basis of any litigation or claim that was pending at any time prior to the effective date of this Coverage Part;

**d.** Any claim or "suit" based upon, arising out of or attributable, in whole or in part, to any "abusive act" of which any insured, other than any insured actually committing the "abusive act", has knowledge prior to the effective date of this Coverage Part;

**e.** Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or similar law;

**f.** Any "abusive act" committed by an "employee" or "volunteer" with a prior criminal conviction for an "abusive act";

**g.** Any person who actually or allegedly participated in, directed or knowingly allowed any "abusive   act".

**3. Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**c.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**d.** All costs taxed against the insured in the "suit".

**e.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**f.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**4. Special Supplementary Payments**

In addition to payments noted in **Supplementary Payments** above, we will reimburse you, only with respect to any claim or "suit" for an "abusive act" to which this insurance applies, for the following expenses you incur:

**a.** Your reasonable expenses incurred in conducting an internal investigation of or counseling relating to allegations of an "abusive act"; and

**b.** Your reasonable expenses in retaining the services of a media consultant or public relations professional in response to allegations of an "abusive act".

These reimbursements will not reduce the Limits of Insurance.  However, the most we will reimburse you for the sum of all such expenses, regardless of the number of  "abusive acts", claimants, claims, "suits" or insureds, is the Special Supplementary Payment Limit shown in the Abusive Act Liability Coverage Form Declarations.  We have no obligation to arrange for any of these services or pay any of the service providers on your behalf.

**SECTION II – WHO IS AN INSURED**

Each of the following is an insured:

**1.** You, but only with respect to the conduct of your business described in the Abusive Act Liability Coverage Form Declarations;

**2.** Your "employees", directors, officers, trustees, clergy, wardens, deacons, elders, teachers, members of the vestry, members of the board of trustees, members of standing committees, members of the board of governors or members of the board of education, but only while any of these persons is performing duties in the conduct of your business described in the Abusive Act Liability Coverage Form Declarations; and

**3.** Any "volunteer", but only while performing, with your consent, duties in the conduct of your business described in the Abusive Act Liability Coverage Form Declarations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Abusive Act Liability Coverage Form Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Actual, alleged or threatened "abusive acts";

    **c**. Claims made or "suits" brought; or

    **d.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for the sum of all  "loss" covered under this Coverage Part with respect to any one  "policy year."

**3.** Subject to **2.** above, the Each Abusive Act Limit is the most we will pay for the sum of all  "loss" because of "injury" from any one "abusive act". If any "abusive act" or "injury" resulting from that "abusive act" occurs in more than one policy or "policy year" that we have issued to you, we will pay the "loss" arising from such "abusive act" from the limits of insurance of just the one "policy year" in which the "abusive act" began.  Should you not be able to determine exactly which "policy year" was in effect when the "abusive act" began, you can designate the "policy year" that you reasonably believe was in effect at the beginning of the "abusive act" "loss".  We will pay all such "loss" from only the limits of insurance of that designated "policy year".

We will only pay "loss" in excess of the Each Abusive Act Retention shown in the Abusive Act Liability Coverage Form Declarations.

## SECTION IV – CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.  However, this provision shall not affect our ability to invoke any applicable statute of limitations, statute of repose or similar statute, common law principle or court rule on behalf of the insured.

**2. Duties In The Event of Abusive Act, Claim or Suit**.

    **a.** You will, as a condition precedent to your rights under this Coverage Part, give to us notice in writing of any "abusive act" or "injury" which may result in a claim or "suit".   To the extent possible, notice should include:

        **(1)** How, when and where the "abusive act" took place;

        **(2)** The names and addresses of any injured persons and any witnesses; and

        **(3)** The nature and description of any "injury" arising out of the "abusive act".

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You will, as a condition precedent to your rights under this Coverage Part:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expenses, without our consent.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a claim or "suit" seeking "loss" from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for any amount that is not payable under the terms of this Coverage Part or that is in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a "loss" covered under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary when no other valid and collectible insurance is available to the insured for a "loss" we cover under this insurance.

**b. Excess Insurance**

Subject to **c.** below, if other valid and collectible insurance is available to the insured for a "loss" we cover under this insurance, this insurance is excess over that insurance. When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. We will pay only our share of the amount of "loss", if any, that exceeds the total amount that all such other insurance would pay for the "loss" in the absence of this insurance.

At our request, you will provide us with detailed information regarding all other insurance policies that have been issued to you as well as all other policies under which you could potentially seek coverage if you chose to do so. Also, at our request, you will tender any claim or "suit" that we designate to any insurer(s) that we designate, and cooperate with us in seeking coverage (including contribution and/or indemnification of any amounts that we pay under this policy) for such claim or "suit" from such insurer(s).

**c. Non-Cumulation Of Insurance**

In no event may the Limit of Insurance available under this policy be combined in any manner with the limits of insurance of any other insurance written by us or any of our affiliates.

These provisions do not apply to policies expressly written to be excess of this policy.

5. **Representations**

By accepting this policy, you agree the statements contained in the application and any documents or information submitted with it are true, accurate and complete, and that we have issued this Coverage Part in reliance upon those statements.

6. **Separation Of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

7. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has the right to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after the "loss" to impair them. At our request, the insured will bring litigation or other proceedings, or transfer those rights to us and help us to enforce them.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

8. **When We Do Not Renew**

   If we decide not to renew this Coverage Part, we will mail or deliver to you written notice of the non-renewal no less than 30 days before the expiration date.  If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Abusive act" means any act or series of acts of actual or threatened abuse or molestation done to any person, resulting in "injury" to that person, including any act or series of acts of actual or threatened sexual abuse or molestation done to any person, resulting in "injury" to that person, by anyone who causes or attempts to cause the person to engage in a sexual act:

   a. Without the consent of or by threatening the person, placing the person in fear or asserting undue influence over the person;

   b. If that person is incapable of appraising the nature of the conduct or is physically incapable of declining participation in or communicating unwillingness to engage in the sexual act; or

   c. By engaging in or attempting to engage in lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of any person.

   All interrelated or continuous "abusive acts" committed by one person or persons acting in concert, shall be deemed to be one "abusive act".

2. "Employee" means a person employed by the insured for compensation and includes a "leased worker".  "Employee" does not include a "temporary worker".

3. "Injury" means physical injury, sickness, disease, mental anguish, mental injury, shock or fright or death of the person(s) who is the subject of an "abusive act".

4. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker".

5. "Loss" means those sums that the insured is legally obligated to pay as damages, provided, however, that "loss" will not include:

   a. Taxes, fines or penalties;

   b. Any damages awarded for punitive or exemplary purposes or any damages for which the amount is determined by the application of a multiplier, where such amounts are not insurable under applicable law; or

   c. Any other sums that are uninsurable under the applicable law.

   All claims or "suits" based upon or arising out of or in any way involving the same or related "abusive act" or the same or related series of "abusive acts", shall be deemed to be a single "loss".

6. "Policy period" means the period of time from the effective date to the expiration date shown in the Abusive Acts Liability Coverage Form Declarations or to any earlier date of termination.

7. "Policy year" means the period of one year following the effective date of this policy or any anniversary thereof or, if the time between the effective date or any anniversary thereof and the termination of the "policy period" is less than one year, such lesser period.

8. "Suit" means a civil proceeding in which damages because of  "injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must     submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

9. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**10.** "Volunteer" means a person who is not your "employee" and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Prior Criminal Conviction Exclusion Deletion



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

Abusive Act Liability Coverage Form

Exclusion **f.** under Paragraph **2.**, **Exclusions** of **Section I** – **Coverages** is deleted in its entirety.

All other terms and conditions of this policy remain unchanged.

# Hired And/Or Non-Owned Auto Coverage Declarations



| | |
|---|---|
| **This insurance is provided by:** | *Zurich American Insurance Company*   (A stock insurance company)
*1299 Zurich Way*
*Schaumburg, IL 60196*
*(800) 987-3373* |

**Policy Number:** PRA 5854106-07

Item 1.  **Named Insured:**
NAOS On-Site Staffing, LLC

**Agency Name:**
World Wide Specialty Programs, Inc.
**Agency Code:** 93962000

Item 2.  **Policy Period:**  From: 09/13/2019        To: 09/13/2020        12:01 A.M. local time at the address shown above.

Item 3.  Endorsements Effective at Inception:        See **Schedule Of Forms And Endorsements**

Date issued:    09/13/2019

Item 4. **Schedule Of Coverages And Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos* | Limit
The Most We Will Pay For Any One
Accident Or Loss | Premium |
|---|---|---|---|
| Liability | 8,9 | $1,000,000 | $4,750.00 |
| Uninsured Motorists | N/A | | |
| Underinsured Motorists | N/A | | |
| Physical Damage Comprehensive Coverage | 8 | See Item 5. | $155.00 |
| Physical Damage Collision Coverage | 8 | See Item 5. | $332.00 |
| | | **Tax/Surcharge/Fee** | N/A |
| | | **Premium For Endorsements** | N/A |
| | | **Total Premium** | $5,237.00 |

*Entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form shows which autos are covered autos.

Item 5. **Schedule Of Hired Or Borrowed Covered Auto and Non-Ownership Coverage And Premiums**

| Hired Or Borrowed Covered Auto and Non-Ownership Liability Coverage | | |
|---|---|---|
| State | Rating Basis -
Number of Employees | Premium |
| GA | 2,807 | $4,750.00 |
| | **Total Premium** | $4,750.00 |

Includes copyrighted material of Insurance Services Office , Inc. with its permission.

| Hired Or Borrowed Covered Auto Physical Damage Coverage | | |
|---|---|---|
| **Coverages** | **Limit Of Insurance** <br> **The Most We Will Pay** <br> **Deductible** | **Premium** |
| Comprehensive | Actual cash value or cost of repair, whichever is less, minus $1,000 Deductible for each covered auto, but no deductible applies to loss caused by fire or lightning. | $155.00 |
| Collision | Actual cash value or cost of repair, whichever is less, minus $1,000 Deductible for each covered auto. | $332.00 |
| | **Total Premium** | $487.00 |

| Non-Owned (Symbol 11 Only) Covered Auto Physical Damage Coverage* | | |
|---|---|---|
| **Coverages** | **Limit Of Insurance** <br> **The Most We Will Pay** <br> **Deductible** | **Premium** |
| Comprehensive | Actual cash value or cost of repair, whichever is less, minus $1,000 Deductible for each covered auto, but no deductible applies to loss caused by fire or lightning. | Not Covered |
| Collision | Actual cash value or cost of repair, whichever is less, minus $1,000 Deductible for each covered auto. | Not Covered |
| | **Total Premium** | $0.00 |

U-SIA-D-100-C CW (02-17)

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**COMMERCIAL AUTO**
**CA 00 01 10 13**

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

### 1. Who Is An Insured

The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "auto".

   This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed;

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   © Insurance Services Office, Inc., 2011   CA 00 01 10 13

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

  **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

  **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

  **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

  **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

  **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

  **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

  **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

  **a. Comprehensive Coverage**

    From any cause except:

    **(1)** The covered "auto's" collision with another object; or

    **(2)** The covered "auto's" overturn.

  **b. Specified Causes Of Loss Coverage**

    Caused by:

    **(1)** Fire, lightning or explosion;

    **(2)** Theft;

    **(3)** Windstorm, hail or earthquake;

    **(4)** Flood;

    **(5)** Mischief or vandalism; or

    **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

  **c. Collision Coverage**

    Caused by:

    **(1)** The covered "auto's" collision with another object; or

    **(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

  **a.** Glass breakage;

  **b.** "Loss" caused by hitting a bird or animal; and

  **c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

  **a. Transportation Expenses**

    We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

  **b. Loss Of Use Expenses**

    For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

    **(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

    **(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

          © Insurance Services Office, Inc., 2011          CA 00 01 10 13

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

**1.** The most we will pay for:

**a.** "Loss" to any one covered "auto" is the lesser of:

**(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

**(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

© Insurance Services Office, Inc., 2011
CA 00 01 10 13

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

   **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

   **1.** A lease of premises;

   **2.** A sidetrack agreement;

   **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

   **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

   **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

   **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **2.** Vehicles maintained for use solely on or next to premises you own or rent;

   **3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  **a.** Power cranes, shovels, loaders, diggers or drills; or

  **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

  **b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **a.** Equipment designed primarily for:

    **(1)** Snow removal;

    **(2)** Road maintenance, but not construction or resurfacing; or

    **(3)** Street cleaning;

  **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

  **1.** Damages because of "bodily injury" or "property damage"; or

  **2.** A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

  **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

 © Insurance Services Office, Inc., 2011 **CA 00 01 10 13**

COMMERCIAL AUTO
CA 01 09 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

For a covered "auto" licensed or principally garaged in Georgia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Covered Autos Liability Coverage is primary for an "auto" you don't own if operated by the "insured" and owned by a retail seller of "autos".

2. If you are a retail seller of "autos", Covered Autos Liability Coverage is excess for an "auto" you own if operated by an "insured" other than you or your "employee".

3. The **Expected Or Intended Injury** Exclusion is replaced by the following:

   **Expected Or Intended Injury**

   This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

   However, this exclusion does not apply for coverage up to the minimum limit specified by the Georgia Motor Vehicle Safety Responsibility Act.

**B. Changes In Physical Damage Coverage**

1. If Collision Coverage is provided, Collision Coverage is primary for an "auto" you don't own if operated by the "insured" and owned by a retail seller of "autos".

2. If you are a retail seller of "autos", Collision Coverage is excess for an "auto" you own if operated by an "insured" other than you or your "employee".

3. The "diminution in value" Exclusion does not apply.

**C. Changes In Conditions**

1. Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following:

   **6.** If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

2. Paragraph **2.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   **a.** In the event of "accident", claim, "suit" or "loss", we or our representative must receive prompt notice of the "accident" or "loss". Include:

      **(1)** How, when and where the "accident" or "loss" occurred;

      **(2)** The "insured's" name and address; and

      **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

   The requirement for giving notice of a claim, if not satisfied by the "insured" within 30 days of the date of the "accident", may be satisfied by an injured third party who, as the result of such "accident", has a claim against the "insured". However, in this event, notice of a claim given by an injured third party must be mailed to us.

    © Insurance Services Office, Inc., 2012

Wolters Kluwer Financial Services | Uniform Forms™

**3.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**Concealment, Misrepresentation Or Fraud**

We will not pay for any "loss" or damage in any case of:

**a.** Concealment or misrepresentation of a material fact; or

**b.** Fraud;

committed by you or any other "insured", at any time, and relating to coverage under this policy.

**4.** The last sentence in the **Appraisal For Physical Damage Loss** Condition is replaced by the following:

We do not waive any of our rights under this policy by agreeing to an appraisal.

© Insurance Services Office, Inc., 2012

**CA 01 09 10 13**

POLICY NUMBER: PRA 5854106-07

**COMMERCIAL AUTO**
**CA 04 44 03 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# waiver of transfer of rights of recovery against others to us (waiver of subrogation)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modi-fied by the endorse-ment.

This endorsement changes the policy effective on the inception date of the policy unless another date is indi-cated

| | |
|---|---|
| **Named Insured:** | NAOS On-Site Staffing, LLC |
| **Endorsement Effective Date:** | 09/13/2019 |

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s)** |
|---|
| All persons and/or organizations that are required in a written contract or agreement with the insured,  executed prior to the accident or loss, that Waiver of Subrogation be provided under this policy for work performed by you for that person and/or organization. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The **Transfer Of Rights Of Recovery Against Others To Us**
Condition does not apply to the person(s) or organization(s)
shown in the Schedule, but only to the extent that subrogation is
waived prior to the "accident" or the "loss" under a contract with that
person or organization.

POLICY NUMBER: PRA 5854106-07

**COMMERCIAL AUTO**
**CA 20 48 02 99**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DESIGNATED INSURED

This endorsement modifies insurance provided under the following:

      BUSINESS AUTO COVERAGE FORM
      GARAGE COVERAGE FORM
      MOTOR CARRIER COVERAGE FORM
      TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modi-fied by this endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" under the Who Is An Insured Provi-sion of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy effective on the inception date of the policy unless another date is indi-cated below.

| Endorsement Effective: 09/13/2019 | Countersigned By: _Dorothy Taylor_ |
|---|---|
| Named Insured: NAOS On-Site Staffing, LLC | (Authorized Representative) |

### SCHEDULE

**Name of Person(s) or Organization(s):**

    Any person or organization to whom or to which you are required to provide additional insured status or additional insured status on a primary, non-contributory basis, in a written contract or written agreement executed prior to loss, except where such contract or agreement is prohibited by law.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to the endorsement.)

Each person or organization shown in the Schedule is an "insured" for Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured Provision contained in **Section II** of the Coverage Form.



**THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND
CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# NOTICE REGARDING TERRORISM PREMIUM
# (FOR COMMERCIAL AUTOMOBILE INSURANCE)

**SCHEDULE\***

---

Premium attributable to risk of loss resulting from terrorism for the Commercial Automobile line of insurance :

   **1% of Auto Liability Premium.**

---

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.   Terrorism Risk Insurance Act ("TRIA")**

The Commercial Automobile line is not part of TRIA.   On December 22, 2005, the President of the United States signed the first TRIA extension act into law and, at that time, the Commercial Auto line was removed from the program.   The federal government does not share in Commercial Automobile terrorism losses.

**B.  Disclosure of Terrorism Premium**

We have elected to provide notice to you of the amount of the total policy premium attributable to the risk of loss from terrorism for the Commercial Automobile line of insurance.

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission

# Staffing Industry Amendatory Endorsement



| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. | |
|---|---|
| Policy No. PRA 5854106-07 | Effective Date: 09/13/2019 |

This endorsement modifies insurance provided under the:

**Business Auto Coverage Part**

It is agreed that:

**A.** The description of Covered Auto Designation Symbol 9 is replaced by the following:

Non-owned "Autos" Only

  **1.** Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs ;

  **2.** Only those "autos" you do not own, lease, hire, rent or borrow that are used by a "staffing services worker" or a "PEO worker" in connection with your client's business;

  **3.** Those "autos" that qualify as Non-owned "Autos" under both 1. and 2. above.

**B.** The following is added to General Condition **2. Concealment, Misrepresentation Or Fraud**:

However, we will not deny coverage under this coverage form if you unintentionally:

  **(1)** Fail to disclose any hazards existing at the inception date of this coverage form; or

  **(2)** Make an error, omission, improper description of "autos" or other misstatement of information.

You must notify us as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to the acceptance of this policy.

**C.** Changes to **Section V** - Definitions

The following definitions are added:

"PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

"PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

"Staffing services worker" means a person who is furnished by you to your client to perform the duties to which you have agreed.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Staffing Industry Crime Coverage Declarations



This policy consists of this Declarations form, the Common Policy Declarations and the Staffing Industry Crime Coverage Form (Loss Sustained Form or Discovery Form).

**Policy Number:** PRA 5854106-07

Item 1.  **Named Insured:**
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

**Agency Name:** World Wide Specialty Programs, Inc.

**Agency Code:** 93962000

Item 2.  **Policy Period:** From: 09/13/2019 To: 09/13/2020  12:01 A.M. local time at the address shown above.

Item 3.  **Employee Benefit Plan(s) Included As Insureds:**
North American On-Site 401(k) Plan

Item 4.  **Coverage is provided for the Insuring Agreements designated with a Limit of Insurance and Deductible.**

| | Insuring Agreement | Limit Of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|---|
| **1.a.** | Coverage For Your Employee's Dishonest Acts | $ 500,000 | $ 2,000 |
| **1.b.** | Client's Coverage For Your Employee's Dishonest Acts | $ 500,000 | $ 2,000 |
| **1.c.** | Legal Liability Coverage For Your Employee's Dishonest Acts | $ 500,000 | $ 2,000 |
| **1.d.** | Coverage For Theft Of Your Trade Secrets By Your Employee | $ 500,000 | $ 2,000 |
| **1.e.** | Coverage for Theft Of Client Trade Secrets By Your Employee | $ 500,000 | $ 2,000 |
| **2.** | Coverage For Loss Inside The Premises | $ 100,000 | $ 1,000 |
| **3.** | Coverage For Loss Outside The Premises | $ 100,000 | $ 1,000 |
| **4.** | Coverage For Money Orders And Counterfeit Paper Currency | $ 100,000 | $ 1,000 |
| **5.** | Coverage For Depositor's Forgery | $ 100,000 | $ 1,000 |
| **6.** | Coverage For Credit Card Forgery And Related Court Costs And Attorneys' Fees | $ 100,000 | $ 1,000 |
| **7.a.** | Coverage For Computer Fraud | $ 100,000 | $ 1,000 |
| **7.b.** | Coverage For Funds Transfer Fraud | $ 100,000 | $ 1,000 |

Item 5.  **If Added By Endorsement:**

| Insuring Agreement | Limit Of Insurance Per Occurrence | Deductible Amount Per Occurrence (If applicable) |
|---|---|---|
| N/A | $ N/A | $ N/A |
| N/A | $ N/A | $ N/A |
| N/A | $ N/A | $ N/A |

Item 6.  **Total Policy Premium**                      **Premium:** $ 6,928.00

Item 7.  **Endorsements Effective at Inception:**      See Schedule of Forms and Endorsements

# Staffing Industry Crime Coverage Form
# (Loss Sustained Form)



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **G. Definitions**.

**A.  Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations.  Subject to the terms and conditions of this Coverage Form, such coverage applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations (except as provided in **C. Limit Of Insurance And Prior Insurance**, Paragraphs **1.** and **2.**) which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the **Extended Period To Discover Loss** Condition **F.15.**, as follows:

**1.  Blanket Employee Dishonesty Coverage**

    **a.  Coverage For Your Employee's Dishonest Acts**

        We will indemnify you for loss of your "money", "securities" and "other property", sustained as the direct result of "dishonest acts" actually committed by an "employee", whether identified or not, acting alone or in collusion with others.

    **b.  Client's Coverage For Your Employee's Dishonest Acts**

        At your written request, we will indemnify your "client", for loss of such "client's" "money", "securities" and "other property", sustained as the direct result of "dishonest acts" actually committed by an "employee", acting alone or in collusion with others.

        The loss or damage must occur while the "employee" is:

        **(1)**  Being compensated by you; and

        **(2)  (a)**  In the service of the "client" or at the direction of the "client" in the service of others; or

                **(b)**  In your service while performing duties related to the conduct of your business.

        You must identify the "client" in the proof of loss submitted to us.

    **c.  Legal Liability Coverage For Your Employee's Dishonest Acts**

        We will pay on your behalf those sums that you become legally obligated to pay as damages to which this insurance applies because of "dishonest acts" committed or allegedly committed by your "employee", acting alone or in collusion with others.  The loss must occur while the "employee" is being compensated by you and while in the course of the "employee's" employment.

        We will also pay on your behalf those sums that you become legally obligated to pay as damages to which this insurance applies because of "dishonest acts" committed or allegedly committed by a "staffing services worker", acting alone or in collusion with others and placed by you in the course of your business as a "Vendor Management Service".

        We will indemnify you for reasonable "defense costs" incurred by you with our prior written consent, to defend against any suit seeking these damages, even if such suit is groundless, false or fraudulent.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

We have the right but not the duty to defend you against any suit seeking these damages. However, we will not defend you against any suit seeking damages to which this insurance does not apply. We may, at our discretion, investigate and settle any suit that may result.

Any expense incurred by us in defense or investigation of such suit will be paid as part of "defense costs" under this Insuring Agreement **1.c.**

**d.   Coverage For Theft Of Your Trade Secrets By Your Employee**

We will indemnify you for loss of earnings you sustain as the direct result of theft by your "employee", acting alone or in collusion with others, of your "trade secret".

**e.   Coverage for Theft Of Client Trade Secrets By Your Employee**

At your written request, we will indemnify your "client" for loss of earnings sustained by your "client" as the direct result of theft by your "employee", acting alone or in collusion with others, of "client trade secrets".

The theft must occur while the "employee" is:

**(1)**  Being compensated by you; and

**(2) (a)**  In the service of the "client" or at the direction of the "client" in the service of others; or

**(b)**  In your service while performing duties related to the conduct of your business.

You must identify the "client" in the proof of loss submitted to us.

**2.   Coverage For Loss Inside The Premises**

**a.**  We will indemnify you for loss or damage caused by the actual destruction, disappearance or wrongful abstraction of your "money" and "securities" within "your premises" or within any "banking premises".

**b.**  We will indemnify you for loss or damage to:

**(1)**  "Other property" caused by actual or attempted "safe burglary" or "robbery" within "your premises"; and

**(2)**  A locked cash drawer, cash box or cash register caused by the actual or attempted felonious entry into such container within "your premises", or caused by the actual or attempted felonious abstraction of such container from within "your premises".

**c.**  We will indemnify you for loss or damage to:

**(1)**  Your "trade secret", caused by actual or attempted "burglary" or "robbery of a watchperson", while "your premises" are not open for business; and

**(2)**  "Your premises" and its exterior, and to property within "your premises", caused by actual or attempted "burglary" or "robbery of a watchperson". This Paragraph **(2)** applies only if:

**(a)**  You are the owner of "your premises"; or

**(b)**  You are liable for damage to "your premises".

**d.**  We will indemnify you for loss or damage to "your premises" caused by "safe burglary", "robbery" or felonious abstraction, or by the actual or attempted burglarious entry into "your premises". This Paragraph **d.** applies only if:

**(1)**  You are the owner of "your premises"; or

**(2)**  You are liable for damage to "your premises".

**3.   Coverage For Loss Outside The Premises**

**a.**  We will indemnify you for loss of or damage to "money" and "securities" caused by the actual destruction, disappearance or wrongful abstraction thereof outside "your premises" while being conveyed by a "messenger" or any armored motor vehicle company, or while within the living quarters in the home of any "messenger".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**b.**   We will indemnify you for loss of or damage to "other property" by "robbery" or attempt thereat outside "your premises" while being conveyed by a "messenger" or any armored motor vehicle company, or by theft while within the living quarters in the home of any "messenger".

**c.**   At your written request, we will indemnify your "client", for loss of or damage to such "client's" "money" and "securities" caused by the actual destruction, disappearance or wrongful abstraction thereof outside the "cllents' premises" while being conveyed by a "messenger".

The loss or damage must occur while the "messenger" is:

**(1)**   Being compensated by you; and

**(2)**   In the service of your "client".

You must identify the "client" in the proof of loss submitted to us.

**4.**   **Coverage For Money Orders And Counterfeit Paper Currency**

We will indemnify you for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**a.**   Money orders issued or purported to be issued by any post office, express company or bank that are not paid upon presentation; or

**b.**   Counterfeit United States or Canadian paper currency that is acquired during the regular course of business.

**5.**   **Coverage For Depositor's Forgery**

**a.**   We will indemnify you for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in "money", made or drawn by or drawn upon you, or made or drawn by someone acting as your agent and drawn upon you, or purported to have made or drawn by or drawn upon you or made or drawn by one acting as your agent, including:

**(1)**   Any check or draft made or drawn in your name and payable to a fictitious payee and endorsed in the name of such fictitious payee;

**(2)**   Any check or draft procured in a face to face transaction with you or with someone acting as your agent, by anyone impersonating another, if such check or draft is made or drawn payable to the impersonated party and is endorsed by anyone other than the impersonated party; and

**(3)**   Any payroll check, payroll draft or payroll order made or drawn by you, payable to bearer as well as to a named payee and endorsed by anyone other than the named payee without authority from the named payee;

whether or not any endorsement described in **(1)**, **(2)** or **(3)** is a forgery within the law of the applicable jurisdiction.

**b.**   We will indemnify any bank in which you maintain a checking or savings account, as their interests may appear, for forgery or alteration of financial instruments of the type described in Paragraph **5.a.** above, if such bank is included in the proof of loss you submit to us.

**c.**   You shall be entitled to priority of payment over loss sustained by any bank described in Paragraph **5.b.**  Loss under this Insuring Agreement, whether sustained by you or such bank, shall be paid directly to you in your own name, unless such bank has fully reimbursed you for such loss. Our liability to such bank for such loss shall be a part of and not in addition to the Limit of Insurance applicable to this Insuring Agreement.

**d.**   If you or such bank refuses to pay any of the financial instruments that are of the type described in Paragraph **5.a.** above based on allegations that such instruments are forged or altered, and if the refusal to pay results in a suit being brought against you or such bank to enforce payment:

**(1)**   If we provide our written consent to the defense of such suit, then any reasonable attorneys' fees, court costs, or similar legal expenses incurred and paid by you or such bank for such defense shall be deemed to be covered under this Insuring Agreement; and

**(2)**   Our payment for such reasonable attorneys' fees, court costs, or similar legal expenses will be in addition to the Limit of Insurance under this Insuring Agreement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**e.**  Signatures that are produced or reproduced electronically, mechanically or by other means are treated the same as handwritten signatures.

**f.**  For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**g.**  This Insuring Agreement does not apply to loss involving fraud or dishonesty on the part of any "employee".

**6.  Coverage For Credit Card Forgery And Related Court Costs And Attorneys' Fees**

**a.  Credit Card Forgery**

We will indemnify you for loss resulting directly from forgery or alteration of, on or in any written instrument required in conjunction with any credit card issued to you or to your partner, officer or "employee", or to your spouse or any child residing permanently in your residence, provided however, that you must fully comply with the provisions, conditions and other terms under which such credit card has been issued.

This Insuring Agreement does not apply to loss involving fraud or dishonesty on the part of any of the "employees".

**b.  Court Costs And Attorneys' Fees**

We will indemnify you for reasonable attorneys' fees, court costs or similar legal expenses incurred and paid by you in the defense of any suit brought against you to enforce payment on any written instrument specified in Paragraph **6.a.** above, alleging that such instrument is forged or altered. The suit must result from your refusal to pay such instrument, and we must give our written consent to the defense of such suit.

You must have fully complied with the provisions, conditions and other terms under which any credit card, specified in Paragraph **6.a.**, has been issued. Our liability under this Insuring Agreement for such attorneys' fees, court costs or similar legal expenses shall be in addition to the Limit of Insurance for this Insuring Agreement.

**7.  Coverage For Computer Fraud And Funds Transfer Fraud**

**a.  Computer Fraud**

We will indemnify you for loss of, damage to, or wrongful abstraction of "money", "securities" or "other property" resulting directly from the use of any computer or other electronic device, including a unified communications device, to fraudulently cause a transfer of such property from inside "your premises" or a "banking premises" to a person (other than a "messenger") or to a place outside of "your premises".

**b.  Funds Transfer Fraud**

We will indemnify you for loss of your "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver your "funds" from your "transfer account".

**B.  Exclusions**

This insurance does not cover:

**1.**  Loss due to any fraudulent, dishonest or criminal act committed by:

**a.**  You or any of your partners or "members", whether acting alone or in collusion with others;

**b.**  Your "client";

**c.**  Any of your "client's" officers, directors, partners, or "members";

**d.**  Any employee of your "client".

Paragraphs **b.**, **c.**, and **d.** of this exclusion apply only to Insuring Agreements **1.a.** through **1.e.**

**2.**  Loss or damage resulting from:

**a.**  War, including undeclared or civil war;

**b.**  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    **c.**  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**3.**  Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**4.**  Loss due to the surrender of "money", "securities" or "other property" away from "your premises" or the "clients' premises" as a result of a threat to:

    **a.**  Inflict bodily harm to any person; or

    **b.**  Inflict damage to "your premises" or "your property", or to the "clients' premises" or "clients' property".

This exclusion does not apply to:

    **(1)**  Insuring Agreement **1.a.**, **1.b.**, or **1.c.** if such coverage is provided by this policy; or

    **(2)**  Insuring Agreement **3.**, to loss of "money", "securities" or "other property" while in the care and custody of a "messenger" if you or your "client":

        **(a)**  Had no knowledge of any threat at the time the conveyance began; or

        **(b)**  Had knowledge of a threat at the time the conveyance began, but the loss was not related to that threat.

**5.**  The defense of any legal proceeding brought against you, or to fees, costs or expenses incurred or paid by you to defend any legal proceeding whether or not such legal proceeding results or would result in a loss to you that is covered by this Coverage Form.

This exclusion does not apply to Insuring Agreement **1.c.**, Paragraph **d.** of Insuring Agreement **5.**, or Paragraph **b.** of Insuring Agreement **6.**

**6.**  You or your "client's" inability to realize income, including interest and dividend income, that you or your "client" would have realized had there been no loss of or damage to "your property" or your "clients' property".

This exclusion does not apply to your "trade secrets" as covered under Insuring Agreements **1.d.** or **2.**, nor to "client trade secrets" as covered under Insuring Agreement **1.e.**

**7.**  Payment of damages of any type for which you or your "client" are legally liable.  But we will pay compensatory damages arising directly from a loss covered under this insurance, including compensatory damages that you become legally obligated to pay because of judgments rendered against you, or for settlements made with our written consent.

**8.**  Payment of costs, fees or other expenses you or your "client" incur in establishing either the existence or the amount of loss under this insurance.

This exclusion does not apply to expenses payable under **E. Coverage Extensions**.

**9.**  Loss of proprietary information, trade secrets, confidential processing methods or other confidential information of any kind.

This exclusion does not apply to your "trade secrets" as covered under Insuring Agreements **1.d.** or **2.**, nor to "client trade secrets" as covered under Insuring Agreement **1.e.**

**10.**  Loss of "money" or "securities" given by your "client" that is a bank, stockbroker, brokerage house or any of their subsidiary companies, corporations, or agencies to any of your "employees" for purposes of transportation.

**11.**  Loss caused by an "employee" with respect to whom coverage was terminated by written notice and not subsequently reinstated under any similar prior insurance or bond carried by you or any of your predecessors in interest.

**12.**  Any loss, unless included in your proof of loss that is submitted to us in accordance with the requirements specified under **Duties In The Event Of Loss**.

**13.**  Any payments arising from a settlement or agreement made without our prior written consent in which you agree to be responsible for a loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

14. Any "defense costs", except those incurred:

    **a.**   With our written consent; and

    **b.**   In defense of suits for damages against you,

to which coverage under Insuring Agreement **1.c.** applies.

15. Any loss arising from liability assumed by you under any contract or agreement, except to the extent that you would have been liable in the absence of such contract or agreement.

16. Loss resulting from seizure or destruction of property by order of governmental authority.

17. Loss or damage caused by or resulting from pollution.  Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

18. Loss resulting from any "dishonest act" committed by any "PEO worker", whether acting alone or in collusion with other persons.  This exclusion does not apply to a "dishonest" act committed by any "PEO worker" against you.

19. Under Insuring Agreements **1.a.**, **1.b.**, **1.c.**, **1.d.**, **1.e.** and **7.**, loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

    **a.**   An inventory computation; or

    **b.**   A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer the inventory records and actual physical count of inventory in support of the amount of loss claimed.

20. Under Insuring Agreements **1.a.**, **1.b.**, **1.d.** and **1.e.**, any loss arising from a "dishonest act" committed by an unidentified "employee".

This exclusion does not apply if the evidence proves beyond a reasonable doubt that such "dishonest act" was committed by an "employee", either acting alone or in collusion with others, subject to Exclusion **19.**

21. Under Insuring Agreements **2.**, **3.** and **7.**, loss due to any fraudulent, dishonest or criminal act by your "employee", director, trustee, partner, "member" or authorized representative, whether working or not, and whether acting alone or in collusion with others.

22. Under Insuring Agreements **2.**, **3.** and **7.**, loss:

    **a.**   Resulting from the giving or surrendering of "money" or "securities" in any exchange or purchase;

    **b.**   Resulting from accounting or arithmetical errors or omissions; or

    **c.**   Of manuscripts.

23. Under Insuring Agreements **2.**, **3.** and **7.**, loss of "money" contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

24. Under Insuring Agreements **2.** and **3.**, loss or damage resulting from fire, however caused.  This exclusion does not apply to:

    **a.**   Loss of or damage to your "money" and "securities"; and

    **b.**   Loss from damage to a safe or vault.

25. Under Insuring Agreements **2.** and **3.**, loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

26. Under Insuring Agreement **3.**, "your property" while in the custody of any armored motor vehicle company, unless such loss is in excess of the amount you recover or receive under:

    **a.**   Your contract with such armored motor vehicle company;

    **b.**   Insurance carried by such armored motor vehicle company for the benefit of the users of its service; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    **c.** All other insurance and indemnity in force in any form carried by or for the benefit of the users of such armored motor vehicle company's service, and then this insurance shall apply only to such excess.

**C. Limit Of Insurance And Prior Insurance**

The most we will pay for all loss is the applicable Limit of Insurance shown in the Declarations for the Insuring Agreement under which such loss is covered.

Payment of loss under Insuring Agreements **1.a.** through **1.e.**, **5.** or **6.** shall not reduce our Limit of Insurance for other losses payable under the applicable Insuring Agreement.

Our total liability under Insuring Agreements **1.a.** through **1.e.** for all loss caused by any "employee" or in which such "employee" is concerned or implicated is limited to the Limit of Insurance shown in the Declarations for the Insuring Agreement applicable to the loss.

Our total liability under Insuring Agreements **5.** or **6.** for all loss by forgery or alteration committed by any person or in which such person is concerned or implicated, whether such forgery or alteration involves one or more instruments, is limited to the Limit of Insurance shown in the Declarations for the Insuring Agreement applicable to the loss.

Our liability for loss sustained by more than one Named Insured shall not exceed the amount for which we would be liable had all such loss been sustained by any one Named Insured.

    **1. Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

        **a. Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

        If you "discover" loss or your "client" notifies you of loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

        **(1)** Partly during the Policy Period shown in the Declarations; and

        **(2)** Partly during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

        and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period.  We will then settle the remaining amount of loss that you sustained during the Policy Period(s) of the prior insurance.

        **b. Loss Sustained Entirely During Prior Insurance**

        If you "discover" loss or your "client" notifies you of loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

        **(1)** This insurance became effective at the time of cancellation of the prior insurance; and

        **(2)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

        We will first settle the amount of loss that you sustained during the most recent prior insurance.  We will then settle any remaining amount of loss that you sustained during the Policy Period(s) of any other prior insurance.

        **c.** In settling loss subject to this provision:

        **(1)** The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

        **(2)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance.  If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

Page 7 of 18

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

**2. Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

   **a.** If you "discover" loss or your "client" notifies you of loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the Policy Period or Bond Period of any prior

      cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to "discover" loss under that insurance had expired, we will pay for the loss under this insurance, provided:

      **(1)** This insurance became effective at the time of cancellation of the prior insurance; and

      **(2)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

   **b.** In settling loss subject to this provision:

      **(1)** The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance or bond.

      **(2)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance or bond.

   **c.** The insurance provided under this provision is subject to the following:

      **(1)** If loss covered under this provision is also partially covered under Paragraph **C.1.**, the amount recoverable under this provision is part of, not in addition to, the amount recoverable under Paragraph **C.1.**

      **(2)** For loss covered under this provision that is not subject to Paragraph **c.(1)** above, the amount recoverable under this provision is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

         **(a)** This insurance as of its effective date; or

         **(b)** The prior cancelled insurance had it remained in effect.

**3. Loss Covered Under More Than One Insuring Agreement**

If any loss is covered under more than one Insuring Agreement, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements.

**D. Deductible**

We will not pay for loss unless the amount of such loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. The Deductible Amount applicable to Insuring Agreement **1.a.** does not apply to loss sustained by any "employee benefits plan".

You must give us notice of any loss that is potentially covered under this Coverage Form, in excess of:

**1.** The Deductible Amount applicable to the Insuring Agreement covering such loss; or

**2.** $5,000,

whichever is less. You must also include with this notice a brief statement providing details of such loss. The notice of loss required under this Deductible provision applies in addition to the requirements specified under **Duties In The Event Of Loss**.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## E.  Coverage Extensions

**1.**   If the Declarations indicate that Coverage For Your Employee's Dishonest Acts is provided, we will reimburse you for reasonable expenses incurred to determine the amount of loss sustained under this coverage.  However, this extension does not apply to expenses incurred to establish that you have sustained a loss.

The most we will pay under this extension for such expenses is $25,000 for any one loss.  Any amount payable under this extension applies in addition to the limit for "Coverage For Your Employee's Dishonest Acts".

We will reimburse you for such expenses only if the amount of loss, not including expenses to determine the amount of loss, exceeds the deductible applicable to "Coverage For Your Employee's Dishonest Acts".

**2.**   If the Declarations indicate that Client's Coverage For Your Employee's Dishonest Acts is provided, we will reimburse your "client" for reasonable expenses incurred to determine the amount of loss sustained under this coverage.  However, this extension does not apply to expenses incurred to establish that your "client" has sustained a loss.

The most we will pay under this extension for such expenses is $25,000 for any one loss.  Any amount payable under this extension applies in addition to the limit for "Client's Coverage For Your Employee's Dishonest Acts".

We will reimburse you for such expenses only if the amount of loss, not including expenses to determine the amount of loss, exceeds the deductible applicable to "Client's Coverage For Your Employee's Dishonest Acts".

**3.**   We will indemnify you for loss of your "money" sustained as the direct result of theft, embezzlement, larceny, extortion, misappropriation, wrongful abstraction, wrongful conversion or willful misapplication committed with the intent of depriving you of such "money", by:

**a.**   any natural person employed by a "Vendor Management Service"; or

**b.**   any natural person who is a director, officer, manager or trustee of such "Vendor Management Service",

acting alone or in collusion with others.

The most we will pay under this extension is $25,000 for any one loss, but we will not pay for loss unless the amount of such loss under this extension exceeds $2,500.

## F.  Conditions

The following Conditions apply in addition to the Common Policy Conditions:

**1.   Discovery And Coverage Territory**

**Discovery**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance only if it is "discovered" no later than one year from the date of that cancellation.

**Coverage Territory**

Subject to Section **C. Limit of Insurance And Prior Insurance**, Paragraphs **1.**, **2.** and **3.**:

**a.**   With respect to Insuring Agreements **1.a.** through **1.e.**, this insurance applies only to loss which you sustain or your "client" sustains through fraudulent or "dishonest acts" committed during the Policy Period by any of the "employees" being compensated by you and in the service of your "client" anywhere in the world;

**b.**   With respect to Insuring Agreements **2.**, **3.**, **4.** and **7.**, this insurance applies to loss which you sustain resulting directly from an "occurrence" taking place during the Policy Period anywhere in the world;

**c.**   With respect to Insuring Agreements **5.** and **6.**, this insurance applies only to loss which you sustain during the Policy Period taking place anywhere in the world.

**2.   Consolidation – Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity, its persons shall become "employees" and its premises shall become "your premises".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

If your total assets increase more than 15% because of such consolidation, merger or acquisition, you must give us written notice within 90 days of the consolidation, merger or acquisition, and shall pay us an additional premium, which will be calculated pro rata from the date of such consolidation, merger or acquisition to the end of the current Policy Period.

Any entity acquired during the policy period shall be subject to coverage only for covered loss sustained as a direct result of an act or acts committed during this policy period and subsequent to the effective date of the acquisition. No coverage is afforded for loss incurred by such entity prior to its acquisition by you. If any entity was acquired prior to the effective date of this policy, no coverage is afforded for loss incurred prior to the date of acquisition of such entity.

**3.   Joint Insured**

   **a.**   If more than one Named Insured is named in the Declarations, the first Named Insured will act for itself and for every other insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

   **b.**   If your Corporate Officer or Risk Manager has knowledge of or "discovers" any information relevant to this insurance, that knowledge is considered knowledge of every Insured for the purposes of Conditions **5. Termination As To Any Employee** and **6. Duties In The Event Of Loss**.

   **c.**   Cancellation of the insurance as respects any "employee" as provided in Condition **5. Termination As To Any Employee** shall apply to every Named Insured.

   **d.**   If this insurance or any of its coverages is cancelled as to any insured, loss sustained by that insured is covered only if it is "discovered" by you no later than one year from the date of that cancellation or no later than one year from the date of that cancellation with regard to any "employee benefits plans".

   **e.**   Our payment to the first Named Insured for loss covered by this insurance, other than loss sustained by an "employee benefits plan", shall fully release us from our obligation for such loss.

**4.   Clients' Books And Records**

   You shall have no obligation to keep records of "clients' property" unless such property is on "your premises" in your care, custody and control.

**5.   Termination As To Any Employee**

   The coverage under Insuring Agreements **1.a.** through **1.e.** terminates as to any "employee":

   **a.**   Immediately upon "discovery" by you, your partner, officer, proprietor or director, not in collusion with such "employee", that such "employee" has committed any fraudulent act or "dishonest act" while in your service or otherwise.   This applies regardless of whether such act was committed before or after the date the "employee" became employed by you; or

   **b.**   At 12:01 A.M. standard time, on the date specified in a notice mailed to the first Named Insured.  That date will be at least 30 days after the date of mailing.

   We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

   If, prior to the issuance of this policy, your fidelity, employee dishonesty, employee theft insurance or bond was terminated as to any "employee" by giving written notice to you, and if such "employee" has not been reinstated under the coverage of such insurance or bond or superseding insurance or bond, then we shall not be liable for such "employee" under this policy unless we agree in writing to include such "employee" within the coverage of Insuring Agreements **1.a.** through **1.e.**

**6.   Duties In The Event Of Loss**

   Upon knowledge or "discovery" of loss or of an "occurrence" which may result in a claim for loss, you must:

   **a.**   Notify us or our authorized representatives as soon as possible, but not later than 30 days from the date of such knowledge or "discovery".  Except under Insuring Agreements **1.a.** through **1.e.**, **5.** and **6.**, you must also notify the local law enforcement authorities if the loss involves a violation of law;

   **b.**   Give us a detailed, sworn proof of loss within four months after the "discovery" of loss;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**c.** Submit to examination, under oath at our request and give us a signed statement of your answers;

**d.** Produce for our examination all pertinent records, and

**e.** Cooperate with us in all matters pertaining to the loss or claim.

In addition, proof of loss under Insuring Agreements **5.** and **6.** shall include any instrument which is the basis of claim for such loss.  If it is impossible to include such instrument, your affidavit or the affidavit of your bank of deposit setting forth the amount and cause of loss will be accepted in lieu of the instrument which is the basis of the claim for such loss.

You will not be considered to have knowledge or "discovery" of a loss or an "occurrence" until:

**(1)** if you are an individual, you or your Risk Manager,

**(2)** if you are a corporation, your Corporate Officer or your Risk Manager,

**(3)** if you are a partnership or joint venture, your partner or member, or your Risk Manager,

**(4)** if you are a limited liability company, your member or your Risk Manager,

is aware of such loss or "occurrence".

**7. Legal Action Against Us**

**a.** You may not bring any legal action against us involving loss unless you have complied with all the terms of this insurance.

**b.** Under all Insuring Agreements except **1.c.**:

Legal action against us for the recovery of any loss shall not be brought:

**(1)** Until 90 days after you have filed proof of loss with us; and

**(2)** Unless brought within two years from the date you "discovered" such loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**c.** Under Insuring Agreement **1.c.**:

Legal action against us for the recovery of loss shall not be brought until the amount of your obligation to pay has been finally determined either by judgment against you after actual trial or by written agreement between you, us and the claimant. Any person or organization, or their legal representative, who has secured such judgment or written agreement shall thereafter be entitled to recover under this insurance to the extent of the Limit of Insurance afforded under Insuring Agreement **1.c.**

**d.** No person or organization shall have any right under this Coverage Form to join us as a codefendant in any action against you to determine your liability, nor shall we be impleaded by you or your legal representative.

**8. Valuation, Payment, Replacement**

**a.** In no event will our liability for loss of "securities" be more than its market value thereof at the close of business on the day the loss was "discovered".

**b.** We will not be liable for more than the actual cost of reproducing any lost or damaged books of account or other records used by you or your "client" in their business. The cost of reproducing such books and records will include only the cost of blank books, tapes, pages or other materials plus labor costs for the actual transcription or copying of data furnished by you or your "client" for this purpose. We will not be liable to make any payments with respect to any books of account or other records which are not reproduced.

**c.** With respect to "other property", we will not be liable for more than its actual cash value at the time of loss. However, the actual cash value of such "other property" held by you as a pledge, or as collateral for an advance or a loan, shall be deemed not to exceed the value of the property as determined and recorded by

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

you when making the advance or loan.  In the absence of such record, the actual cash value of such "other property" shall be the unpaid portion of the advance or loan plus accrued interest thereon at legal rates.

**d.** We may, with your consent, settle any claim for loss of property with the owner of such property.  Any property for which we have made indemnification shall become our property.

**e.** With respect to damage to "your premises", your "clients' premises" or loss of or damage to "other property", we shall not be liable for more than the actual cash value of such property, or for more than the actual cost of repairing such premises or property, or of replacing such property with property or material of like quality and value. We may, at our option, pay the actual cash value of the property or make repairs or replacements to the property. If we or you cannot agree upon the actual cash value of, or the cost of repairs or replacement, to such property, the actual cash value or cost of repairs or replacement shall be determined by arbitration.

**f.** We will not be liable for "trade secrets" under Insuring Agreements **1.d.** or **2.**, nor to "client trade secrets" under Insuring Agreement **1.e.**, until the amount of the loss is determined.

To determine the amount of loss, you shall submit the total revenue for the three months following the "discovery" of the loss and the total revenue for the same three months of the prior calendar year.

If the total revenue for the three months following the "discovery" of loss is less than the total revenue for the same three months of the prior calendar year, that difference shall constitute a loss to which the Deductible shall then be applied; subject to the Limit of Insurance shown in the Declarations for Insuring Agreements **1.d.** or **2.**

We will not be liable for "trade secrets" under Insuring Agreements **1.d.** or **2.**, nor to "client trade secrets" under Insuring Agreement **1.e.**, if the total revenue for the three months following the "discovery" of the loss exceeds the total revenue for the same three months of the prior calendar year.

**g.** We will be liable for loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(1)** At face value in the "money" issued by that country; or

**(2)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**9.  Recoveries**

**a.** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

**(1)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(2)** Second, to you in satisfaction of any loss not covered under this insurance;

**(3)** Third, to us in satisfaction of amounts paid in settlement of your claim; and

**(4)** Fourth, to you in satisfaction of any Deductible Amount.

**b.** Recoveries do not include any recovery:

**(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(2)** Of original "securities" after duplicates of them have been issued.

**10.  Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**11.  Other Insurance Or Indemnity**

If other valid and collectible insurance or indemnity is available to you for loss covered under this insurance, we shall be liable only for that part of such loss which is in excess of the amount recovered or recoverable from such

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

other insurance or indemnity.  In no event shall we be liable for more than the Limit of Insurance provided under this policy for the coverage that is applicable to such loss.

**12. No Benefit To Bailee**

With respect to Insuring Agreements **2.**, **3.** and **7.**, the insurance afforded by this policy shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire.

**13. Employee Benefits Plan**

**a.**   The "employee benefits plans" shown in the Declarations (hereinafter referred to as Plan) are included as insureds under Insuring Agreement **1.a.**

**b.**   If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **1.a.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**c.**   With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **1.a.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or "dishonest acts" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**d.**   If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**e.**   If two or more Plans are insured under this insurance, any payment we make for loss:

**(1)**   Sustained by two or more Plans; or

**(2)**   Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**14. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.**   This insurance;

**b.**   The property covered under this insurance;

**c.**   Your interest in the property covered under this insurance; or

**d.**   A claim under this insurance.

**15. Extended Period To Discover Loss**

We will pay for loss that you or your "client" sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you or which you are notified of by your "client" no later than one year from the date of that cancellation.

**16. Liberalization**

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**17. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**a.**   That you own or lease; or

**b.**   That you hold for others whether or not you are legally liable for the loss of such property.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

However, this insurance is for your benefit only.  It provides no rights or benefits to any other person or organization.  Any claim for loss that is covered under this insurance must be presented by you.

This condition does not apply to your "clients' property" covered under this insurance.  We may, with your consent, settle any claims for loss of such property with the owner.

## G. Definitions

**1.** "Banking premises" means the interior of that portion of any building occupied by any financial services provider, including but not limited to a banking institution or similar safe depository, in conducting its business.

**2.** "Burglary" means the felonious abstraction of "your property":

    **a.** From within "your premises" by a person making felonious entry therein by actual force and violence, as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of "your premises" at the place of such entry; or

    **b.** From within "your premises" by a person making felonious exit therefrom by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the interior of "your premises" at the place of such exit.

**3.** "Client" means any person or organization to whom you render "staffing services".

**4.** "Client trade secret" means your "client's" customer list, including the names, addresses and identity of all your "client's" customers who have transacted business with your "client" within a period of 180 days prior to the separation of any "employee" from your agency. This information shall constitute a "client trade secret" and be considered confidential information which belongs to your "client".

Notwithstanding the provisions of the above paragraph, no liability shall attach to, and no cause of action shall arise from, the use of "client trade secrets" by a former "employee" who enters into a business generally similar to your "client's" business more than one year immediately following termination of employment.

**5.** "Clients' premises" means the interior of that portion of any building your "client" occupies in conducting its business.

**6.** "Clients' property" means any "money", "securities" or "other property" that has intrinsic value:

    **a.** Belonging to a "client";

    **b.** Held by a "client" in any capacity; or

    **c.** For which a "client" is legally liable.

"Clients' property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

**7.** "Custodian" means you, any of your partners or "members", or any "employee" who is authorized by you, while having care and custody of property inside "your premises", excluding any person while acting as a "watchperson", porter or janitor.

**8.** "Defense costs" means all reasonable defense costs, charges and expenses incurred by us, or incurred by you with our prior written approval.  Such "defense costs" must be incurred in the defense of any suit which if proven, could lead to any payment under Insuring Agreement **1.c.**  "Defense costs" do not include the salaries of your officers or your "employees".

**9.** "Discover", "discovered" or "discovery" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover", "discovered" or "discovery" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

10. "Dishonest act" means the unlawful taking of "your property" or your "clients' property" by an "employee" by theft, "robbery", "burglary", embezzlement, larceny, extortion, misappropriation, wrongful abstraction, wrongful conversion or willful misapplication, with the intent of depriving you or your "client" of such property.

11. "Employee" means:

   **a.** Any natural person while:

      **(1)** In your service and whom you compensate by salary, wages or commissions; or

      **(2)** While on a leave of absence;

     If you are a corporation, this includes any natural person who is a:

      **(a)** Director or trustee; or

      **(b)** Corporate officer who does not receive salary, wages, commissions or other compensation,

     but only while such person is performing acts within the scope of the usual duties of an "employee";

   **b.** Your ex-"employee" for a period of 90 days following termination of such person's services to you, subject to the **Termination As To Any Employee** Condition of this Coverage Form and to the Cancellation Condition in the Common Policy Conditions;

   **c.** Any natural person who is your director, officer, manager or trustee while such person is engaged in handling "funds" or "other property" of any "employee benefits plan" owned, controlled or operated by you, or any natural person who is a director, officer, manager, employee or trustee of an "employee benefits plan", provided the "employee benefits plan" is listed as a Named Insured under this Coverage Form;

   **d.** Your volunteer or intern while in your service, but only while performing duties related to the conduct of your business; and

   **e.** Any individual or organization under written contract or written agreement that provides "staffing services" on your behalf and at your direction for your "clients".

   "Employee" does not include any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character.

12. "Employee benefits plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

13. "Fraudulent instruction" means:

   **a.** An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

   **b.** A written instruction (other than those described in Insuring Agreement **2.**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

   **c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

14. "Funds" means "money" and "securities".

15. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a manager.

16. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" who is authorized by you to have care and custody of "your property" outside "your premises".

17. "Money" means:

   **a.** Currency, coins and bank notes in current use and having a face value;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**b.** Bullion; and

**c.** Travelers checks, register checks and money orders held for sale to the public.

**18.** "Occurrence" means:

    **a.** Under Insuring Agreements **1.a.** through **1.e.**:

        **(1)** An individual act;

        **(2)** The combined total of all separate acts whether or not related; or

        **(3)** A series of acts whether or not related;

    committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under **C. Limit Of Insurance And Prior Insurance**, Paragraphs **1.** and **2.**

    **b.** Under Insuring Agreement **5.**:

        **(1)** An individual act;

        **(2)** The combined total of all separate acts whether or not related; or

        **(3)** A series of acts whether or not related;

    committed by a person acting alone or in collusion with other persons, involving one or more instruments**,** during the Policy Period shown in the Declarations, except as provided under **C. Limit Of Insurance And Prior Insurance**, Paragraphs **1.** and **2.**

    **c.** Under all other Insuring Agreements:

        **(1)** An individual act or event;

        **(2)** The combined total of all separate acts or events whether or not related; or

        **(3)** A series of acts or events whether or not related;

    committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under **C. Limit Of Insurance And Prior Insurance**, Paragraphs **1.** and **2.**

**19.** "Other property" means any tangible property, other than "money", "securities" and your "trade secrets", that has intrinsic value.  "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

**20.** "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your "clients" and to "PEO workers" in connection with employment of such workers.

**21.** "PEO worker" means a person you lease to your "client" under a written "PEO service" agreement or contract.

**22.** "Robbery" means the unlawful taking of property:

    **a.** By violence inflicted upon a "messenger" or a "custodian";

    **b.** By putting such "messenger" or "custodian" in fear of violence;

    **c.** By any other overt felonious act committed in the presence of such "messenger" or "custodian" and of which he was actually cognizant, provided such other act is not committed by your partner or "employee";

    **d.** From the person or in the direct care and custody of a "messenger" or "custodian" who has been killed or rendered unconscious; or

    **e.** Under Insuring Agreements **2.** and **3.**:

        **(1)** From within "your premises" by means of compelling a "messenger" or "custodian" by violence or threat of violence while outside "your premises" to admit a person into "your premises" or to furnish such person with means of ingress into "your premises", or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(2)** From a showcase or show window within "your premises" while regularly open for business, by a person who has broken the glass thereof from outside "your premises".

23. "Robbery of a watchperson" means the taking of "your property" by violence or threat of violence inflicted upon a private "watchperson" employed by you while such "watchperson" is on duty within "your premises".

24. "Safe burglary" means the unlawful taking of:

   **a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

   **b.** A safe or vault from inside "your premises".

25. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

   **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you.

   "Securities" does not include "money".

26. "Staffing services" means services provided by your staffing company to your "clients" including but not limited to:

   **a.** Staffing related administrative services provided by an Administrative Services Organization (ASO);

   **b.** "PEO service";

   **c.** Staffing related services provided to your "clients" for the recruitment, selection and placement of a person for employment with a "client";

   **d.** Temporary, contingent or contract placement services;

   **e.** "Vendor Management Services";

   **f.** Services performed on behalf of your "client" by a "staffing services worker" who is not a direct hire or permanent placement;

   **g.** Services performed for a "client" to supply that "client" with a "staffing services worker".

27. "Staffing services worker" means a person who is furnished by you to your "client" to perform the duties to which you have agreed.

28. "Trade secret" means your customer list, including:

   **a.** The names, addresses and identity of all "employee" customers who have listed job orders with a "staffing service" within a period of 180 days prior to the separation of any "employee" from the agency; and

   **b.** The names, addresses and identity of all applicants or "employees" used in "staffing services".

   The information specified in Paragraphs **a.** and **b.** above shall constitute  your "trade secret" and be considered confidential information which belongs to the "staffing services".

   Notwithstanding the provisions of the above paragraphs, no liability shall attach to, and no cause of action shall arise from, the use of a customer list of any "staffing services" by a former "employee" who enters into business as "staffing services" more than one year immediately following termination of employment.

29. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

   **a.** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

   **b.** By means of written instructions (other than those described in Insuring Agreement **2.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**30.** "Vendor Management Service" (VMS), means the facilitation, purchase and management of "staffing services" for "clients" including the placement and fulfillment of orders for "staffing services workers". "Vendor Management Service" includes a Managed Service Provider (MSP).

**31.** "Watchperson" means any person you retain specifically to have care and custody of property inside "your premises" and who has no other duties.

**32.** "Your premises" means the interior of that portion or any building which is occupied by you in conducting your business.

**33.** "Your property" means "money", "securities" or "other property":

    **a.** Belonging to you;

    **b.** Held by you in any capacity; or

    **c.** For which you are legally liable.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Crime Plus - Schedule Of Limits



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This Schedule is used in conjunction with the Crime Plus Endorsement - Additional Covered Expenses.   Payment for the additional covered expenses identified in the Schedule below shall not reduce the limits of any other coverage provided by this policy.   If more than one coverage under this policy applies to an expense or cost, the coverage with the higher limits shall apply.

**SCHEDULE**

| Additional Covered Expenses | Annual Limit Of Insurance |
|---|---|
| 8.  Expense Coverage For "Security Breach" By An "Employee" | $         50,000 |
| 9.  Expense Coverage For "Security Breach" By Someone Other Than An "Employee" | $         50,000 |
| 10.  Expense Coverage For Unauthorized Use Of Another's Personal Identity Information By An "Employee" | $         50,000 |
| 11.  Expense Coverage For Unauthorized Use Of Your Corporate Officer's Or Director's Personal Identity Information By Someone Other Than An "Employee" | $         50,000 |
| 12.  Coverage For Kidnap Expense | $         50,000 |

Includes copyrighted material of Insurance Services Office, Inc. with its permission



# Crime Plus Endorsement - Additional Covered Expenses

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

**Named Insured and Mailing Address:**
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

**Producer:**
World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:
   **Staffing Industry Crime Coverage Form (Discovery Form)**
   **Staffing Industry Crime Coverage Form (Loss Sustained Form)**

**A.**   The following are added to Section **A. Insuring Agreements**:
   **8.**   **Expense Coverage For "Security Breach" By An "Employee"**
      We will reimburse you or your "client" for the following costs and expenses that are incurred as a result of a "security breach", by an "employee", of your confidential business records or your "client's" confidential business records:
      **a.**   **Damage Assessment Expenses**
         Costs incurred to analyze and determine the extent of the "security breach", including but not limited to its origination and duration, the specific records accessed, the extent of damage or alteration of the records, and whether notice of the "security breach" must be provided to any other party.
      **b.**   **Business Income Loss And Dependent Business Income Loss**
         Income lost due to the any interruption of service resulting from a covered "security breach".
      **c.**   **Reward Payment**
         Amounts paid for information leading to the arrest and conviction of an "employee" for a "security breach".
      **d.**   **Breach Of Privacy Liability Assessment**
         Costs incurred to determine:
         **(1)**   Whether the "security breach" has resulted in the unauthorized release of confidential information, and, if such unauthorized release has occurred, the extent of such release;
         **(2)**   Whether you or your "client" have an obligation to any party that could be affected by such unauthorized release of confidential information; and
         **(3)**   An estimate of the potential liability of such unauthorized release.
      **e.**   **Data Replacement**
         The cost to replace or correct any records damaged, altered or destroyed by the covered "security breach".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

The most we will pay for such costs and expenses incurred during the policy period is the Annual Limit Of Insurance for Expense Coverage For "Security Breach" By An "Employee" shown in the Crime Plus - Schedule Of Limits.

9.  **Expense Coverage For "Security Breach" By Someone Other Than An "Employee"**

    We will reimburse you for the following costs and expenses that are incurred as a result of a "security breach", by someone other than an "employee", of your confidential business records.

    a.  **Damage Assessment Expenses**

        Costs incurred to analyze and determine the extent of the "security breach", including but not limited to its origination and duration, the specific records accessed, the extent of damage or alteration of the records, and whether notice of the "security breach" must be provided to any other party.

    b.  **Business Income Loss And Dependent Business Income Loss**

        Income lost due to the any interruption of service resulting from a covered "security breach".

    c.  **Reward Payment**

        Amounts paid for information leading to the arrest and conviction of person or persons (other than an "employee") responsible for a "security breach".

    d.  **Breach Of Privacy Liability Assessment**

        Costs incurred to determine:

        (1) Whether the "security breach" has resulted in the unauthorized release of confidential information, and, if such unauthorized release has occurred, the extent of such release;

        (2) Whether you have an obligation to any party that could be affected by such unauthorized release of confidential information; and

        (3) An estimate of the potential liability of such unauthorized release.

    e.  **Data Replacement**

        The cost to replace or correct any records damaged, altered or destroyed by the covered "security breach".

    The most we will pay for such costs and expenses incurred during the policy period is the Annual Limit Of Insurance for Expense Coverage For "Security Breach" By Someone Other Than An "Employee" shown in the Crime Plus - Schedule Of Limits.

10. **Expense Coverage For Unauthorized Use Of Another's Personal Identity Information By An "Employee"**

    We will reimburse you or your "client" for the following expenses that are incurred as a result of an "employee's" unauthorized use of another's personal identity information that such "employee" has obtained or accessed during the course of his or her work activities:

    a.  Expenses to obtain notarized affidavits attesting to fraud when required by credit grantors or credit agencies ;

    b.  Expenses to send mailings of required documents to law enforcement agencies, credit agencies, or credit grantors via certified mail; and

    c.  Expenses to reapply for loans that had been previously declined by a bank or other similar lender solely because of incorrect information received by such bank as a result of such unauthorized use of the applicant 's personal identity information.

    The most we will pay for such expenses incurred during the policy period is the Annual Limit Of Insurance for Expense Coverage For Unauthorized Use Of Another's Personal Identity Information By An "Employee" shown in the Crime Plus - Schedule Of Limits.

11. **Expense Coverage For Unauthorized Use Of Your Corporate Officer's Or Director's Personal Identity Information By Someone Other Than An "Employee"**

    We will reimburse your corporate officers or directors for the following expenses that are incurred as a result of unauthorized use of that officer's or director's personal identity information by someone other than an  "employee":

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**a.** Expenses to obtain notarized affidavits attesting to fraud when required by credit grantors or credit agencies ;

**b.** Expenses to send mailings of required documents to law enforcement agencies, credit agencies, or credit grantors via certified mail; and

**c.** Expenses to reapply for loans that had been previously declined by a bank or other similar lender solely because of incorrect information received by such bank as a result of such unauthorized use of the applicant's personal identity information.

The most we will pay for such expenses incurred during the policy period is the Annual Limit Of Insurance for Expense Coverage For Unauthorized Use Of Another's Personal Identity Information By Someone Other Than An "Employee" shown in the Crime Plus - Schedule Of Limits.

**12. Coverage For Kidnap Expense**

We will reimburse you for reasonable expenses you incur as a result of the kidnapping of any of your officers or directors, or the spouse, domestic partner, parent or child of any of your officers or directors .

We will not pay for any expenses incurred prior to the time you report the kidnapping to the police or other responsible public authorities.

We will not pay for any expenses associated with a kidnapping committed by or at the direction of the victim or any current or former family member of the victim.

The expenses we will pay include but are not limited to the following:

**a.** Fees and expenses of an independent negotiator who has been retained with our prior approval;

**b.** Costs of necessary travel and accommodations you incur as a result of the kidnapping;

**c.** Amounts paid as rewards for information leading to the arrest and conviction of those responsible for the kidnapping.  However, we will not reimburse you for reward expenses incurred unless you obtain our approval prior to offering such a reward.

The most we will pay for such expenses incurred from the reported kidnapping during the policy period is the Annual Limit Of Insurance for Coverage For Kidnap Expense shown in the Crime Plus - Schedule Of Limits.

**B.** Coverage for these Additional Covered Expenses applies only for a "security breach"; unauthorized use of another's personal identity information or kidnapping that begins on or after the effective date of this endorsement .

**C.** Paragraphs **6.**, **8.**, and **9.** in Section **B. Exclusions** do not apply to Insuring Agreements **8.** and **9.**

**D.** "Security breach" means the unauthorized or unlawful access, release, disclosure, alteration, destruction, or misappropriation of private or confidential information.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Loss Payable Clause



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

Named Insured / Mailing Address:
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

Producer:
World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Staffing Industry Crime Coverage Form (Discovery Form)**
**Staffing Industry Crime Coverage Form (Loss Sustained Form)**

**SCHEDULE**

**Name And Address Of Loss Payee:**

Any person or organization who you are required under a  written contract or written agreement to add to this policy as a loss payee, as their interest may appear.

The following Condition is added to Section **F. Conditions**:

**Loss Payable Clause**

1. For "money", "securities" and "other property" in which both you and the Loss Payee shown in the Schedule above have an insurable interest, you agree that any loss payable under this insurance shall be paid jointly to you and the Loss Payee as its interests may appear, and any such payment shall constitute payment to you.

2. The addition of the Loss Payee shown in the Schedule above does not increase the applicable Limit of Insurance.

3. This insurance is for your benefit only. It provides no rights or benefits to any other person or organization, including the Loss Payee, other than to receive payment for loss as set forth in this endorsement.

   Any claim for loss that is covered under this insurance must be presented by you.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office , Inc. with its permission.

# Limits Of Insurance And Deductible Applicable To Specified Client



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

Named Insured and Mailing Address:
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

Producer:
World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Staffing Industry Crime Coverage Form (Discovery Form)**
**Staffing Industry Crime Coverage Form (Loss Sustained Form)**

**SCHEDULE**

Your Client:

      Republic Services, Inc.

| Limit Of Insurance Per Occurrence | Deductible Amount Per Occurrence | Insuring Agreement |
|---|---|---|
| $ 1,000,000 | $ 5,000 | **1.b. Client's Coverage For Your Employee's Dishonest Acts** |
| $ 1,000,000 | $ 5,000 | **1.c. Legal Liability Coverage For Your Employee's Dishonest Acts** |

Only with respect to your client shown in the Schedule above, the amounts shown in the Declarations as Limit Of Insurance Per Occurrence and Deductible Amount Per Occurrence for Insuring Agreements **1.b.** and **1.c.** are replaced by the amounts shown in the Schedule above.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office , Inc. with its permission.

# Georgia Changes – Concealment, Misrepresentation Or Fraud



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Staffing Industry Crime Coverage Form (Discovery Form)**
**Staffing Industry Crime Coverage Form (Loss Sustained Form)**

Condition **14. Concealment, Misrepresentation Or Fraud** in Section **F. Conditions** is replaced by the following:

**14. Concealment, Misrepresentation Or Fraud**

We will not pay for any loss or damage in any case of:

**a.**   Concealment or misrepresentation of a material fact; or

**b.**   Fraud;

committed by you or any other insured, at any time, and relating to coverage under this insurance.


All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Georgia Changes - Client's Coverage For Your Employee's Dishonest Acts - Exclusion Of PEO Worker



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PRA 5854106-07 | 09/13/2019 | 09/13/2020 | 09/13/2019 | 93962000 | | |

Named Insured and Mailing Address:
NAOS On-Site Staffing, LLC
6455 East Johns Crossing
Suite 425
John Creek, GA  30097

Producer:
World Wide Specialty Programs, Inc.
68 South Service Road
Suite 235
Melville, NY  11747

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Staffing Industry Crime Coverage Form (Discovery Form)**
**Staffing Industry Crime Coverage Form (Loss Sustained Form)**

Exclusion **18.** in Section **B. Exclusions** is replaced by the following:

**18.** Under Insuring Agreement **1.b.**, loss resulting from any "dishonest act" committed by any "employee" who is a "PEO worker", whether acting alone or in collusion with other persons.

All other terms, conditions, provisions and exclusions of this policy remain the same.

U-SIC-168-A GA (11-11)

Page 1 of 1

Includes copyrighted material of Insurance Services Office , Inc. with its permission.